[Cite as *State v. Jacob*, 2015-Ohio-4760.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 102076

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HARRY J. JACOB, III

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-584560-A

**BEFORE:** Laster Mays, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** November 19, 2015

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy McGinty
Cuyahoga County Prosecutor

By: Matthew E. Meyer
Christopher D. Schroeder
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} On September 4, 2014, Harry J. Jacob III ("Jacob") was found guilty of three counts of solicitation under R.C. 2907.24(A)(1), misdemeanors of the third degree, and two counts of falsification under R.C. 2921.13(A)(11) and (13), misdemeanors of the first degree.[1] The trial court imposed a sentence of 60 days in jail on each of the solicitation counts, to run concurrently, and 180 days in jail on the falsification counts. The court suspended the latter sentence, placing Jacob on two years of probation with six months of electronic home monitoring.

{¶2} After review of the record, we agree with the trial court's judgment and affirm. Jacob assigns four errors for our review:

> I. The trial court erred to the prejudice of defendant by entering verdicts of guilty of three counts of solicitation that were not supported by sufficient evidence, in derogation of Defendant's right to due process of law under the Fourteenth Amendment to the United States Constitution.
>
> II. The trial court erred to the prejudice of defendant entering verdicts of guilty of three counts of solicitation that were against the manifest weight of evidence, in derogation of defendant's right to due process of law under the Fourteenth Amendment to the United States Constitution.

---

[1] Jacob was charged with 21 counts. Rule 29 was granted for one count of bribery, one count of dereliction of duty, three counts of promoting prostitution, and two counts of tampering with records. He was found not guilty of one count of solicitation, two counts of tampering with records, one count of failure to report a felony, one count of possessing criminal tools, and one count of tampering with evidence. Although charged, he was not prosecuted for two additional counts of solicitation.

III. The trial court erred to the prejudice of defendant by entering verdicts of guilty of two counts of falsification that were not supported by sufficient evidence, in derogation of defendant's right to due process of law under the Fourteenth Amendment to the United States Constitution.

IV. The trial court erred to the prejudice of defendant by entering verdicts of guilty of two counts of falsification that were against the manifest weight of evidence, in derogation of defendant's right to due process of law under the Fourteenth Amendment to the United States Constitution.

## I.       Facts and Procedural Posture

{¶3} While in office, Jacob, a former municipal court judge, repeatedly engaged in and paid for sexual acts with prostitutes. He responded to a backpage advertisement where a woman ("J.J.") placed an ad offering massages for $200.   Once they met in person, the massages turned into sex for money.     He continued to request J.J.'s services by calling her and asking her to meet him at various hotels across the state in order to have sex for money.

{¶4} Jacob also engaged in a three-way sexual act with J.J. and B.B., the second woman he hired for sex.   Jacob met B.B. through J.J. and would contact B.B. through J.J. for threesomes.   He paid and requested that J.J. and B.B. perform sexual acts on each other while he watched and masturbated.   Jacob paid between $200 and $700 depending on the services and situation, and brought wine and lingerie for each of the women.   He also asked B.B. to perform additional sexual acts with him for which he paid.

{¶5} In addition to J.J. and B.B., Jacob solicited sexual services from G.J., a third woman.   He also engaged in a three-way sexual act with J.J. and G.J., after which he began contacting G.J. for sex after the initial three-way encounter.   He sent a friend

request on Facebook to G.J. and began requesting sexual meetings with her at the same hotels he and J.J. would meet. The state produced records showing phone calls from Jacob to the women on the dates they would engage in sexual activity for hire.

**{¶6}** In addition to soliciting prostitution services, Jacob amended a charge on the record in an ex parte proceeding without a prosecutor present. He then signed a journal entry memorializing that fact even though it was false. On May 10, 2012, defendant Holt ("Holt") was involved in a domestic dispute with his stepson and hit him. Holt's mother called the police, and Holt was asked to come to the police station for questioning. In a written statement, Holt said that he hit his stepson in the arm and the back. Based off of his statements, Holt was charged with domestic violence.

**{¶7}** On Monday, May 21, 2012, Holt appeared before Jacob. Deborah Turner ("Turner"), the Bedford Heights prosecutor, was not in court because the Bedford Heights docket was heard on Tuesdays. However if Bedford Heights cases were heard on days other than Tuesday, the court would call Turner to inform her and ask for her input. On this day, Turner was not notified by the court. The only circumstance where a case could be resolved without Turner's agreement was an absolute plea, where the defendant would plead guilty to the original charge without amendment.

**{¶8}** Holt tried to plead guilty to the charge of domestic violence, but Jacob noted his concern on record that a conviction of domestic violence would keep Holt from owning a firearm as well as prevent him from working as a state-testing nursing assistant.

For these reasons, Jacob amended the charge and found Holt guilty of disorderly conduct.

{¶9} During this hearing Jacob did not read Holt his rights, ask him if he consulted with an attorney, hear from the victim, or contact Turner. Instead, he changed the charge from domestic violence to disorderly conduct, and wrote by hand on the file "State" to give the impression that the prosecutor amended the charge. He then signed a judgment entry that was journalized May 25, 2012.

{¶10} As a result, Jacob was found guilty, after a bench trial, of three counts of solicitation and two counts of falsification. Jacob's attorney, during the trial, admitted that Jacob "engaged in the services of prostitutes on a number of occasions." Jacob also admitted to "signing off on a journal entry that's factually inaccurate." Despite this, Jacob argues that he should have been charged with prostitution under R.C. 2907.25 instead of solicitation under R.C. 2907.24(A)(1), and because of that, the evidence is not sufficient to convict him under solicitation. Additionally, Jacob also admits to signing the inaccurate journal entry, but denies that he knowingly did it, which is an element of the falsification statute, R.C. 2921.13. As a result, he filed this timely appeal.

A. Standard of Review

{¶11} When an appellate court reviews a claim of insufficient evidence, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54,

2004-Ohio-6235, 818 N.E.2d 229, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶12} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether

> there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal citations and quotations omitted.) *Leonard* at 68.

{¶13} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. *Black's Law Dictionary* 1433 (6th Ed.1990).

**{¶14}** "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

## II. Law and Analysis

### A. Solicitation

**{¶15}** The evidence was sufficient to find Jacob guilty of solicitation. R.C. 2907.24(A)(1) states that "no person shall solicit another who is eighteen years of age or older to engage with such other person in sexual activity for hire." Jacob admittedly engaged in prostitution with at least three women. However he claims that there is not enough evidence to prove that he solicited these women for sex.

**{¶16}** He argues that they offered to have sex with him for which he accepted and paid for their services. A person is not guilty of a criminal offense unless (1) the person engaged in conduct that a section of the Revised Code prohibits and (2) acts with the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense. R.C. 2901.21(A). The burden of proof for all elements of the offense, beyond a reasonable doubt, is on the prosecution. R.C. 2901.05(A).

**{¶17}** "Sufficiency" of the evidence is a term of art for the legal standard that is applied to determine whether the evidence that was offered is sufficient as a matter of law

to support a finding of criminal liability. *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541. "R.C. 2907.04(A) requires the state to offer evidence sufficient to prove (1) the accused's solicitation of another, (2) to engage in sexual activity, (3) for hire." *State v. West*, 2d Dist. Montgomery No. 22966, 2009-Ohio-6270, ¶ 18. This appeal is about one word, *solicit*. (Emphasis added.) Jacob agrees that he engaged in sexual activity for hire, but that he did not solicit the women for the sexual activity.

{¶18} Solicit means "to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear." *State v. Kent*, 8th Dist. Cuyahoga No. 98863, 2013-Ohio-2461, ¶ 14. Jacob did indeed solicit prostitution services. After the initial meeting, Jacob sought, asked, and invited J.J. by calling her and asking her to meet him at various hotels across the state in order to engage in sexual services. In addition to soliciting J.J.'s services, Jacob requested threesomes and promised special favors in return. He also influenced her by buying wine and lingerie. He even offered an increase in payment for certain acts that influenced her to say yes.

{¶19} Jacob argues that since he simply responded to an advertisement, he accepted an offer for sex, not solicited sex. However advertisements are not offers. *Dawson v. Giant Eagle, Inc.*, 8th Dist. Cuyahoga No. 93337, 2010-Ohio-1060,¶ 8. An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id*. J.J.'s advertisement invited many people to make an offer for her services. Her advertisement was not an offer because the terms were not complete. Once Jacob

responded to her advertisement, he and J.J. discussed price and services. They even haggled over the price for certain services. Additionally, Jacob assented but by his actions nothing was ever concluded. Because of this, J.J.'s advertisement was not an offer.

{¶20} Jacob also argues that these set of facts are analogous to the facts in *State v. Swann,* 142 Ohio App.3d 88, 753 N.E.2d 984 (1st Dist.2001), where the court decided that the prostitute was not guilty of solicitation because she merely accepted the undercover officer's offer to engage in prostitution. We disagree that this decision is relevant to this case. Jacob was not merely driving around when a prostitute offered him sex. He responded to an online advertisement and made an offer to all three women for sexual activity. He asked them to engage in three-way sex, asked for specific sexual favors, and requested that they perform sexual acts on him for a price. He provided wine, lingerie, and meeting places while paying her varying sums of money based upon specific sexual acts. This is the very definition of solicitation. Because there was sufficient and substantial evidence that Jacob solicited at least three women to engage in sexual activity for hire, consequently, we affirm the trial court's decision.

### B. Falsification

{¶21} The evidence was sufficient to find Jacob guilty of falsification. R.C. 2921.13 states, "No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies":

(11)   The statement is made on an account, form, record, stamp, label, or other writing that is required by law; and

(13)   The statement is made in a document or instrument of writing that purports to be a judgment, lien, or claim of indebtedness and is filed or recorded with the secretary of state, a county recorder, or the clerk of a court of record.

**{¶22}**   Jacob does not dispute the fact that he signed off on a journal entry that was factually inaccurate.   Instead, he argues that he did not actually know the journal entry was false.   We emphatically reject this claim.   Jacob's signature was reflected on a journal entry that *he* provided the information for falsification.   (Emphasis added.)

**{¶23}** Jacob would like for this court to believe that he simply forgot that he changed the record, and therefore, cannot be held responsible for its inaccurate information.   However, the facts establish that he was fully aware of his duplicitous actions and tried to hide them.   Jacob knew that the journal entry was false because he was the one who changed it; he changed the entry to make it appear that the prosecutor authorized the amendment to the original charge, and then he signed off on the entry. This clearly demonstrates that he knowingly falsified the journal entry, not just signed a falsified journal entry.

**{¶24}** Jacob argues that his signature is on a boilerplate document, and he did not know that the record in the case was falsified.   This argument is baseless.   As stated above, Jacob is the one who amended the charge and signed the journal entry reflecting the same. Jacob was fully aware that this information was false. Because of these facts,

we affirm the trial court's decision and hold that the evidence was sufficient and substantial to find Jacob guilty of falsification.

{¶25} The trial court's decision is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN
JUDGMENT ONLY