**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Mason,* Slip Opinion No. 2017-Ohio-9215.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-9215

OHIO STATE BAR ASSOCIATION *v.* MASON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Mason,* Slip Opinion No. 2017-Ohio-9215.]

*Judges—Misconduct—Attempted felonious assault and domestic violence—Indefinite suspension with no credit for time served on interim felony suspension and with added conditions for reinstatement.*

(No. 2017-0794—Submitted October 18, 2017—Decided December 28, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2016-037.

_____

**KENNEDY, J.**

{¶ 1} Respondent, Lance Timothy Mason, of Cleveland, Ohio, Attorney Registration No. 0067346, was admitted to the practice of law in Ohio on November 19, 1996. From 2008 to 2014, Mason served as a judge on the Cuyahoga County Court of Common Pleas.

**{¶ 2}** In a complaint filed on August 24, 2016, relator, Ohio State Bar Association, alleged that Mason pled guilty to one count of attempted felonious assault, a third-degree felony, and one count of domestic violence, a first-degree misdemeanor. A hearing was held on March 1, 2017, before a panel of the Board of Professional Conduct. Based on the parties' stipulations and evidence presented at the hearing, the panel found by clear and convincing evidence that Mason committed the charged violations. After weighing the applicable aggravating and mitigating factors, the panel recommended that Mason be disbarred for his misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

**{¶ 3}** We agree with the board that Mason committed the violations alleged in the complaint. However, we disagree with the board that disbarment is the appropriate sanction for Mason. Instead, we impose an indefinite suspension with no credit for time served on the interim felony suspension and with added conditions for reinstatement.

## Misconduct

**{¶ 4}** When the misconduct in this case occurred, Mason was a sitting judge on the Cuyahoga County Court of Common Pleas, General Division. During all relevant times, he was subject to the Code of Judicial Conduct as well as the Rules of Professional Conduct.

**{¶ 5}** In March 2014, Mason and his wife, Aisha Fraser Mason ("Fraser"), separated, with Mason continuing to live in what was the marital home and Fraser residing in an apartment. During their separation, Mason and Fraser shared equally in the custody and parenting of their two minor children.

**{¶ 6}** On August 2, 2014, Mason, Fraser, and the children attended a funeral service for Mason's aunt. Mason and Fraser agreed that after the service, Mason would drop Fraser off at her apartment and Mason would spend the afternoon with the children.

{¶ 7} During the ride to Fraser's apartment, the couple engaged in a conversation about their relationship. As the discussion progressed, Mason became upset and began assaulting Fraser, all the while continuing to drive. Mason struck Fraser repeatedly in the head, hit Fraser's head against the armrest, the dashboard, and the window of the passenger door, and bit Fraser on her face. Fraser attempted to escape the moving car, but Mason grabbed her hair. When the car stopped at a red light, Fraser was able to open the door, but fell to the ground as she tried to flee. With the two children still in the car, Mason placed the vehicle in park, got out, and began to strike Fraser as she lay on the ground.

{¶ 8} Mason then returned to his vehicle and drove away, leaving Fraser behind. Mason and Fraser's two children (ages six and four at the time) were seated in the back seat and witnessed the events. The older child, who has special needs and possesses limited verbal abilities, was quiet while the attack was occurring, but the younger child was screaming.

{¶ 9} Upon arriving at the house, Mason called his sister, Dr. Lynn Mason, and asked her to come and pick up the two children because he intended to shoot himself. He was arrested by police later that day.

{¶ 10} As a result of the attack, Fraser sustained severe physical harm to her head, face, and neck, including an orbital blowout fracture under her left eye. She was hospitalized overnight from August 2-3, 2014, following the attack, and again from August 8-9, 2014, for surgery. Fraser subsequently arranged for her two children to begin counseling. As of February 2017, they continued to receive counseling as a result of what they witnessed on August 2, 2014.

{¶ 11} On August 26, 2014, Mason was charged in an eight-count indictment stemming from this incident. On the same date, this court ordered that Mason be disqualified from acting as a judge pursuant to Gov.Jud.R. III(6)(A). *In re Disqualification of Mason,* 140 Ohio St.3d 1405, 2014-Ohio-3703, 14 N.E.3d 1051. On August 19, 2015, Mason pled guilty to attempted felonious assault and

domestic violence, and on September 16, 2015, he was sentenced to 24 months in prison at the Lorain Correctional Institution and six months in county jail, with the sentences to run concurrently and with additional conditions.

{¶ 12} The board found that Mason's conduct violated Jud.Cond.R. 1.2 (a judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety) and Prof.Cond.R. 8.4(a) (a lawyer shall not violate or attempt to violate the Ohio Rules of Professional Conduct), 8.4(b) (a lawyer shall not commit an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), and 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).

**Sanction**

{¶ 13} When imposing sanctions for judicial and professional misconduct, we consider several relevant factors, including the ethical duties violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), any other relevant factors, and the sanctions imposed in similar cases. *Ohio State Bar Assn. v. Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440, ¶ 11.

{¶ 14} Here, the board unanimously found the following aggravating factors: Mason's victims were vulnerable and suffered harm as a result of Mason's acts; he failed to adequately explain the conduct that is the basis for the violation; he failed to provide assurances that the conduct will not happen again; and he did not fully engage in the redemptive process.

{¶ 15} In mitigation, the board found that Mason did not have a prior disciplinary record, demonstrated a cooperative attitude toward the disciplinary process, and presented evidence of his good character and reputation. *See* Gov.Bar R. V(13)(C)(1), (4), and (5). The board also found that other penalties and sanctions had been imposed for Mason's misconduct. In addition to the criminal sanctions for his offenses, the board noted that Mason was removed from his

4

position as a judge, was incarcerated for his conduct, and was in debt to his former wife for $150,000 from the settlement of a civil case she filed against him. *See* Gov.Bar R. V(13)(C)(6). Mason also apologized in open court to his wife at the conclusion of the civil case.

{¶ 16} We agree with these findings. We find as an additional mitigating factor the fact that Mason was under stress at the time of the assault. His house had flooded twice in the months leading up to the assault. In addition, he was separated from his wife, and he had gone to the ER complaining of chest pains. Finally, the assault occurred on the way home from his aunt's funeral.

{¶ 17} In reaching its recommendation of disbarment as the appropriate sanction, the board relied on five cases involving judges who committed grave misconduct, including four who were convicted of felonies: *Disciplinary Counsel v. Terry*, 147 Ohio St.3d 169, 2016-Ohio-563, 63 N.E.3d 88; *Disciplinary Counsel v. McAuliffe,* 121 Ohio St.3d 315, 2009-Ohio-1151, 903 N.E.2d 1209; *Disciplinary Counsel v. Hoskins*, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324; *Disciplinary Counsel v. Gallagher*, 82 Ohio St.3d 51, 693 N.E.2d 1078 (1998); and *Disciplinary Counsel v. Mosely*, 69 Ohio St.3d 401, 632 N.E.2d 1287 (1994). The aggravating circumstances justifying disbarment in these cases were fraud, dishonesty, protracted or premeditated acts, or the abuse of judicial office.

{¶ 18} In *Terry*, a judge was convicted of multiple federal felonies in connection with his judicial duties. The conduct underlying these convictions consisted of providing judicial favors in exchange for contributions to his 2008 election campaign. This conduct violated five canons of the former Code of Judicial Conduct and two Rules of Professional Conduct. We held that Terry's misconduct "occurred in the performance of his core judicial duties," and as a result, we adopted the board's recommendation of disbarment. *Terry* at ¶ 17.

{¶ 19} In *McAuliffe*, a judge violated the former Code of Professional Responsibility and the former Code of Judicial Conduct by burning down his house

in order to defraud an insurance company, committing several federal felonies in the process. The board recommended the judge's disbarment. This court agreed, concluding that a judge who engages in illegal conduct involving moral turpitude " 'deserves the full measure of our disciplinary authority.' " *Id.* at ¶ 29, quoting *Gallagher* at 53.

{¶ 20} In *Hoskins*, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, a sitting common-pleas judge leased part of a building he owned to the Adult Parole Authority. When he became concerned about leasing to an agency whose representatives regularly appeared before him as witnesses, Hoskins first attempted to conceal his interest in the building, then sought to sell the building to a felon who he knew would be paying him with proceeds from a criminal enterprise. Hoskins also illegally released an inmate from custody on the suggestion of a personal friend, failed to recuse himself from a criminal case in which the defendant was his assistant's son, and made misleading public statements about a pending case. This court was persuaded that the ultimate sanction of permanent disbarment was warranted because Hoskins's misconduct spanned a ten-year period and included deceit and abuse of his office.

{¶ 21} In *Gallagher*, 82 Ohio St.3d 51, 693 N.E.2d 1078, a sitting common-pleas judge was arrested and charged with attempting to distribute cocaine. He pled guilty to distributing cocaine and was sentenced to 12 months in prison. *Id*. We permanently disbarred Gallagher, characterizing the offense of distributing cocaine as a crime "involving moral turpitude." *Id*. at 53. This court approved the board's recommendation for disbarment because this court believed that the judge's felonious conduct "brings disrepute to the judicial system, [by which] the institution is irreparably harmed." *Id*.

{¶ 22} In *Mosely*, 69 Ohio St.3d 401, 632 N.E.2d 1287, a judge was convicted of six federal felonies stemming from a conspiracy to use his position as judge to unlawfully obtain property not due him. He received in excess of $230,000

in illegal payments or kickbacks from certain persons, including court-appointed contractors. This court concurred with the findings and recommendations of the board to disbar the judge for this misconduct.

{¶ 23} In *Cleveland Bar Assn. v. Katalinas*, 90 Ohio St.3d 140, 735 N.E.2d 432 (2000), which was not considered by the board but which demonstrates the same philosophy in assessing sanctions as the cases above, a sitting municipal-court judge agreed to manage the financial affairs of a childhood friend. He took control of the friend's funds for his own personal use and ignored demands for their return. He also agreed to represent clients while a judge and then neglected their cases, and in one case, he refused to return his clients' file unless the clients paid him $5,000. This court adopted the findings, conclusions, and recommendation of the board and disbarred the judge.

{¶ 24} In this case, Mason was convicted of a felony based on a single violent assault. Brutal it surely was. But it was not shown to be premeditated or part of a pattern of behavior. In this regard, we consider this case to be distinguishable from those cited by the board. Instead, we look to *Ohio State Bar Assn. v. McCafferty,* 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521. In that case, a sitting judge was convicted of lying to the Federal Bureau of Investigation. This court imposed an indefinite suspension with no credit for time served. We distinguished previous cases, including those cited by the board in this case: "[T]he circumstances in this case can be distinguished from *Gallagher, McAuliffe,* and *Hoskins,* in which judges were permanently disbarred. In those cases, the judges had engaged in criminal conduct over a period of time, from a few days to months, and the misconduct was preplanned." *Id.* at ¶ 23. We emphasized that McCafferty's violations were unplanned and occurred on a single impromptu occasion, rather than as a pattern of premeditated criminal conduct. *Id.* at ¶ 24. Therefore, we concluded, "imposition of the system's most severe sanction [was] not warranted * * *." *Id.*

**{¶ 25}** We do not demean the gravity and severity of Mason's misconduct, but we do believe that there is a distinction to be made between the misconduct in this case and the cases relied on by the board to justify disbarment as the recommended sanction.

**{¶ 26}** In our research, we have not found any cases in which a judge was disciplined after a felony conviction for assault. However, for purposes of comparison, we look to similar cases involving lawyers who were convicted of felony level assaults. In those cases, this court approved a term of suspension with credit for time served on an interim felony suspension.

**{¶ 27}** In *Disciplinary Counsel v. Whitfield*, 132 Ohio St.3d 284, 2012-Ohio-2708, 971 N.E.2d 915, a lawyer pled guilty to one count of aggravated assault, a fourth-degree felony, for hitting another man at a bar with a glass bottle, causing two facial lacerations and imbedding a piece of glass in the man's eye. After finding violations of the Rules of Professional Conduct, this court suspended the lawyer for two years with credit for time served under the interim felony suspension conditioned upon a two-year extension of his OLAP contract and his continued compliance with the treatment recommendations of his mental-health professionals. *Id*. at ¶ 14.

**{¶ 28}** Similarly, in *Disciplinary Counsel v. Goodall*, 103 Ohio St.3d 501, 2004-Ohio-5583, 817 N.E.2d 23, a lawyer was convicted of aggravated assault, a felony of the fourth degree, for injuring her husband's arm during a domestic dispute. This court imposed a six-month suspension with credit for time served on the interim felony suspension.

**{¶ 29}** We also found that a one-year suspension was warranted when an attorney was convicted of aggravated assault, a felony of the fourth degree, for breaking into a house and getting into an altercation with a male friend of his ex-wife. *Columbus Bar Assn. v. Harris*, 1 Ohio St.3d 33, 437 N.E.2d 596 (1982). The

8

victim in this case suffered "various serious injuries" after the attorney involved in the altercation struck him with a bat. *Id*. at 34.

{¶ 30} We recognize that there are other cases involving attorneys convicted of felonious assault or aggravated assault in which the attorney received an indefinite suspension, but we consider these cases distinguishable from the assault in this case because a deadly weapon was used in the assaults. *See, e.g., Disciplinary Counsel v. Cushion*, 92 Ohio St.3d 144, 749 N.E.2d 224 (2001) (felonious assault: shot female companion/indefinite suspension); *Disciplinary Counsel v. Lucey*, 63 Ohio St.3d 143, 586 N.E.2d 78 (1992) (aggravated assault: stabbed wife with a knife/indefinite suspension); *Disciplinary Counsel v. Colburn*, 42 Ohio St.3d 173, 538 N.E.2d 110 (1989) (felonious assault: shot wife's ex-husband/indefinite suspension).

{¶ 31} Of course, these cases represent discipline of lawyers convicted of felony-level assaults. We hold judges to "the highest possible standard of ethical conduct." *Mahoning Cty. Bar Assn. v. Franko*, 168 Ohio St. 17, 23, 151 N.E.2d 17 (1958); *In re Complaint Against Harper*, 77 Ohio St.3d 211, 220, 673 N.E.2d 1253 (1996). Canon 1 of the Code of Judicial Conduct states, "A judge shall uphold and promote the independence, integrity, and impartiality of the judiciary * * *." Jud.Cond.R. 1.1 states, "A judge shall comply with the law."

{¶ 32} As set forth above, the consistent aggravating circumstances in all of the cases the board relied on is that the judicial misconduct involved either fraud, dishonesty, protracted or premeditated acts, or the abuse of judicial office. The board recommended disbarment, which would mean that Mason "shall not be readmitted to the practice of law in Ohio." Gov.Bar R. V(12)(B). We agree with the board that Mason's misconduct was "egregious." In fact, his misconduct was reprehensible and abhorrent. However, we do not believe that his misconduct fits in the same category as the cases in which disbarment was the sanction imposed.

**{¶ 33}** The primary purpose of judicial discipline is "to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of [the] institution." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33. Because of the distinction between the misconduct in this case and the premeditated or protracted misconduct in the cases relied on by the board, and because Mason's misconduct did not involve dishonesty or abuse of his judicial office, we conclude that the appropriate sanction for Mason is something less than the ultimate penalty of disbarment. But his position as a judge and the gravity of his offense demand something more than a term suspension with credit for time served and the usual conditions for reinstatement. *See* Gov.Bar R. V(24)(A).

**{¶ 34}** The imposition of an indefinite suspension with no credit for time served on the interim felony suspension with conditions is appropriate here because it protects the public by ensuring Mason cannot return to the practice of law without petitioning for reinstatement pursuant to Gov.Bar R. V(25)(A). Before he can be reinstated, he must demonstrate that he has met the conditions set forth in this opinion. Gov.Bar R. V(25)(D)(1). In addition, Mason must establish by "clear and convincing evidence" that he is "now a proper person to be readmitted to the practice of law in Ohio," Gov.Bar R. V(25)(D)(1)(f).

### Conclusion

**{¶ 35}** Accordingly, Lance Timothy Mason is hereby indefinitely suspended from the practice of law with no credit for time served under his interim felony suspension. Furthermore, in addition to the requirements set forth in Gov.Bar R. V(25)(D)(1), the following conditions for reinstatement shall apply: Mason shall (1) submit to a mental-health evaluation conducted by the Ohio Lawyers Assistance Program ("OLAP") and obtain a report that he is able to return to the competent, ethical, and professional practice of law, (2) enter into an OLAP contract, the duration and terms of which shall be determined by OLAP, and (3)

comply with all recommendations of OLAP and his treating professionals. Costs are taxed to Mason.

Judgment

accordingly.

O'CONNOR, C.J., and O'DONNELL, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

J. Desiree Blankenship and Eugene P. Whetzel; and Kelly E. Heile, Butler County Assistant Prosecuting Attorney; and Scanlon Group Co., L.P.A., and Maura E. Scanlon, for relator.

Alkire & Nieding, L.L.C., Richard C. Alkire and Dean Nieding, for respondent.

_____