**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Burge,* **Slip Opinion No. 2019-Ohio-3205.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3205

DISCIPLINARY COUNSEL *v.* BURGE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Burge,* Slip Opinion No. 2019-Ohio-3205.]**

*Judges—Misconduct—Violations of the Code of Judicial Conduct and the Rules of Professional Conduct for failure to act in a manner that promotes public confidence in the judiciary, failure to uphold and apply the law and to perform all duties of judicial office fairly and impartially, engaging in ex parte communications, and committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness—One-year suspension, with six months stayed on conditions.*

(No. 2018-1759—Submitted March 27, 2019—Decided August 13, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct, No. 2016-044.

————————————

**Per Curiam.**

{¶ 1} Respondent, James Michael Burge, of Lorain, Ohio, Attorney Registration No. 0004659, was admitted to the practice of law in Ohio in 1975. Burge served as a Lorain County Common Pleas Court judge from 2007 until he resigned on April 14, 2015 after a jury found him guilty on three counts of tampering with records and three counts of falsification.

{¶ 2} On April 15, 2015, we suspended Burge's license to practice law on an interim basis based on the felony counts of tampering with records. *In re Burge*, 142 Ohio St.3d 1235, 2015-Ohio-1427, 30 N.E.3d 957. On August 10, 2015, we reinstated Burge after being notified that the tampering charges had been reduced to misdemeanors due to an error in the jury-verdict forms. *In re Burge*, 143 Ohio St.3d 1283, 2015-Ohio-3169, 40 N.E.3d 1144.

{¶ 3} In September 2018, relator, disciplinary counsel, filed an amended complaint against Burge charging him with multiple violations of the Code of Judicial Conduct and the Rules of Professional Conduct. The parties submitted stipulations of fact, misconduct, and aggravating and mitigating factors. The matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The panel adopted the parties' stipulations, found that the evidence established that Burge had engaged in the charged misconduct, and recommended a one-year suspension with six months stayed. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. Burge objects to the board's report and recommendation, but only to the extent that the board did not give him credit for time served under his previous interim felony suspension.

{¶ 4} Upon our review of the record, we accept the board's findings of misconduct and agree that a one-year suspension with six months stayed is the appropriate sanction. We also order that Burge be credited with the time he served under his interim felony suspension.

## I. Misconduct

### A. Count One – Criminal Convictions

{¶ 5} Burge's criminal convictions stem from his failure to accurately report on his annual financial-disclosure statements—which he was required to file as an elected official—his interest in Whiteacre North, L.L.C. ("Whiteacre"). Burge and his wife owned a 50 percent share in Whiteacre, whose sole asset was an office building located at 600 North Broadway in Lorain, Ohio.

{¶ 6} In September 1998, Whiteacre secured a $365,000 mortgage from Lorain National Bank and the Whiteacre shareholders, including Burge, signed as joint and several personal guarantors on the loan.

{¶ 7} Burge started his first term on the Lorain County Common Pleas Court in January 2007. That month, the Whiteacre shareholders assigned their full interests in Whiteacre to Shimane and Azurree Smith. The Smiths agreed to pay $70,000 to the shareholders and assumed the debt owed to Lorain National Bank on the property. Whiteacre's mortgage, however, expressly prohibited such an assignment. Moreover, none of the Whiteacre shareholders notified the bank of the assignment or recorded the assignment. And Burge remained a personal guarantor on the bank loan.

{¶ 8} Burge filed his financial-disclosure form for the 2010 calendar year on January 27, 2011. Burge, however, did not list Lorain National Bank as a creditor, Whiteacre as a business that he or his wife operated, or his ownership interest in the building at 600 North Broadway.

{¶ 9} In February 2011, the Smiths defaulted on the agreement, and ownership of Whiteacre reverted back to Burge and the other former Whiteacre shareholders.

{¶ 10} In June 2011, Burge transferred his ownership interest in Whiteacre to his wife for $1.00 without giving notice to Lorain National Bank. Burge also remained a personal guarantor on the bank loan.

**{¶ 11}** Burge submitted his 2011 financial-disclosure form on January 26, 2012, and his 2012 form on February 13, 2013. On both forms, Burge failed to list Whiteacre as a business that he or his wife operated or his ownership interest in the building at 600 North Broadway.

**{¶ 12}** In September 2014, the Lorain County Grand Jury indicted Burge on 12 counts of criminal conduct, ranging from felony offenses of tampering with records and having an unlawful interest in a public contract to misdemeanor offenses of falsification and soliciting improper compensation. In April 2015, a jury found Burge guilty on three counts of tampering with records and three counts of falsification. A visiting judge dismissed the remaining charges.

**{¶ 13}** After the guilty verdicts but before sentencing, Burge resigned from the common pleas court. During sentencing on May 14, 2015, the judge granted Burge's motion to reduce the three felony charges to misdemeanors because the verdict forms failed to specify the appropriate offense level for the tampering charges. As a result, Burge was sentenced on six misdemeanor offenses and the judge imposed fines totaling $3,000. The court of appeals affirmed Burge's convictions on direct appeal. *State v. Burge*, 9th Dist. Lorain No. 16A010936, 2017-Ohio-5836.

**{¶ 14}** Based on Burge's convictions, the parties stipulated and the board found that Burge violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety) and Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness).

### B. Count Two – Failure to Disclose Relationships with Tenant-Lawyers

**{¶ 15}** Between February 2011 and June 2011, while Burge held an ownership interest in Whiteacre, several tenants of 600 North Broadway regularly appeared before Burge as counsel in the Lorain County Common Pleas Court.

4

During this same time period, Burge appointed five of those attorneys to represent indigent defendants in cases pending before him. In addition, Burge approved court-appointed fees to two lawyers who were Whiteacre tenants. Yet Burge did not recuse himself from any of those cases or disclose those relationships to the prosecutors assigned to those cases.

{¶ 16} Against this backdrop, the parties stipulated and the board found that Burge violated Jud.Cond.R. 1.2 and 3.11(C)(3) (prohibiting a judge from engaging in otherwise permitted financial activities if they involve the judge in frequent transactions or continuing business relationships with lawyers or other persons likely to come before the judge's court).

### C. Count Three – Rude and Discourteous Behavior

#### 1. The Slaby Letter

{¶ 17} While serving as a judge in July 2011, Burge wrote a letter on official court stationary to three state representatives regarding his views on certain proposed legislation. Lynn Slaby, a former judge on the Ninth District Court of Appeals and, at that time, a state representative, had sponsored a bill that would have required a prosecutor to consent to a defendant's request to be tried before a judge, rather than a jury. In his letter, Burge characterized Slaby and his proposed legislation as "nothing more than the hobgoblin of a small-minded, mouth-breathing, Tea Party type whose political style and abilities uniquely qualify him to do nothing." Among other insults hurled at Slaby, Burge's letter also stated that "[u]ntil recently, the Ninth District Court of Appeals * * * was nothing more than an affirmative action program for intellectually challenged, Summit County Republican lawyers. That's how Lynn got elected."

#### 2. Derogatory Comments from the Bench

{¶ 18} Burge has stipulated that while presiding over court proceedings he has referred to Caucasian defendants as "crackers" and African American or Latino defendants as "homeboys." Burge also admitted to other improper comments from

the bench.  For example, in 2012, Burge presided over the case of *State v. Hatfield*, Lorain C.P. No. 11CR083687.  Burge decided to continue sentencing because Hatfield had been admitted into the Community Based Correctional Facility.  At the close of the proceeding, Burge commented to Hatfield's lawyer, "I want you to show this cracker [Hatfield] what I was going to do to him."  At that point, Hatfield's lawyer informed Hatfield that Burge had intended to sentence him to three years in prison.  Burge then interjected and the following exchange occurred:

> [Burge]:  I'm sick of you boy.  You hear me?
>
> [Hatfield]:  Yes, Sir.
>
> [Burge]:  You foul up one more time, you're going to the pen.
>
> [Hatfield]:  Yes, Your Honor.
>
> [Burge]:  You know what?  In fact, you've been such a headache, I was looking forward to putting you in the pen.  And I would have paid 50 bucks to give you a beating before you went.  So you finish up that [Community Based Correctional Facility] and you do everything right.
>
> [Hatfield]:  Yes, Your Honor.  Thank you.
>
> [Burge]:  Come back next week.  This is what I've got in mind for you.
>
> [Hatfield]:  Yes, Sir.
>
> [Burge]:  The pen.  I'm aggravated with myself that I can't do it.

{¶ 19} The same year, Burge presided over the trial of *State v. Bernhardt*, Lorain C.P. No. 11CR084147.  James Bernhardt had been convicted of possessing

6

stolen property. During sentencing, Burge engaged in the following colloquy with Bernhardt regarding how he came to possess the stolen property:

> [Burge]: Now, if I were to believe you were that stupid, James, I would just have Deputy Motelewski shoot you right now, because I know you're not going to make it through life. Just tell me you knew it was stolen, that's all.
>
> [Bernhardt]: It was a possibility, yes, sir.
>
> [Burge]: Possibility?
>
> [Bernhardt]: Yes, sir.
>
> [Burge]: Jesus Christ.

{¶ 20} As to count three of the complaint, the parties stipulated and the board found that Burge violated Jud.Cond.R. 1.2 and 2.8(B) (requiring a judge to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity).

### D. Count Four – The Boros Matter

{¶ 21} In 2014, Burge presided over the trial of *State v. Boros*, Lorain C.P. No. 14CR088611. After Boros pleaded guilty but before he was sentenced, Burge engaged in an improper ex parte communication with Boros in the Lorain County Justice Center. Specifically, Burge admitted to talking with Boros after Boros asked if he could withdraw his plea. Burge also admitted that he and Boros discussed issues that Burge would consider during sentencing, namely Boros's mental health and related treatment.[1]

---

1. Shortly after the ex parte communication, Burge was placed under interim suspension for his tampering charges and a visiting judge was appointed to preside over Boros's sentencing hearing.

**{¶ 22}** The parties stipulated and the board agreed that Burge's conversation with Boros violated Jud.Cond.R. 1.2 and 2.9(A) (prohibiting a judge from initiating, receiving, permitting, or considering ex parte communications).

### E. Count Five – The Nieves and Rivera Matters

#### 1. State v. Nieves

**{¶ 23}** In 2012, Burge presided over a bench trial in the case of *State v. Nieves*, Lorain C.P. No. 10CR081259. Samuel Nieves had been indicted on one count of rape and one count of gross sexual imposition in a case involving a 14-year-old girl. At the close of the state's case, Burge granted a Crim.R. 29 motion to acquit on the rape charge. The prosecutor objected to the acquittal, arguing that Burge's decision was contrary to controlling precedent. Burge refused to recognize established case law, but did convict Nieves on the charge of gross sexual imposition. Burge sentenced Nieves to a 17-month prison term, but less than four months later, over the state's objection, Burge granted a motion for judicial release.

**{¶ 24}** During his disciplinary hearing, Burge admitted that—despite being aware of the correct legal standard for rape at the time—he disregarded established precedent when he acquitted Nieves on the rape charge.

#### 2. State v. Rivera

**{¶ 25}** In 2012, Burge presided over the case of *State v. Rivera*, Lorain C.P. No. 12CR085527. During the proceedings, defense counsel informed Burge that Rivera was fluent in Spanish but spoke broken English, which led Burge to question Rivera's ability to understand defense counsel's request to change his plea. Rather than postpone or reschedule the hearing, Burge decided to conduct the hearing in Spanish and then translate what he and Rivera had discussed to the prosecutor and Rivera's attorney. Burge admitted that he had proceeded in this manner during Rivera's case despite R.C. 2311.14, which requires the court to appoint a qualified interpreter whenever a party in a legal proceeding cannot readily understand or communicate.

**{¶ 26}** As to the allegations under Count Five, the parties stipulated and the board agreed that Burge had engaged in professional misconduct in violation of Jud.Cond.R. 1.2 and 2.2 (requiring a judge to uphold and apply the law and perform the duties of judicial office fairly and impartially).

**{¶ 27}** We agree with the board and adopt these findings of fact and misconduct.

## II.  Sanction

**{¶ 28}** When imposing sanctions for judicial and professional misconduct, we consider several relevant factors, including the ethical duties violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See Disciplinary Counsel v. Oldfield*, 140 Ohio St.3d 123, 2014-Ohio-2963, 16 N.E.3d 581, ¶ 17.

### A.  Aggravating and Mitigating Factors

**{¶ 29}** The board found the following aggravating factors: (1) Burge committed multiple violations and (2) he exhibited a dishonest or selfish motive in failing to disclose his relationship with Whiteacre and his receipt of rent payments from the tenant-lawyers who appeared before him in court. *See* Gov.Bar R. V(13)(B)(2) and (4).

**{¶ 30}** In mitigation, the board adopted the panel's findings regarding the following mitigating factors stipulated to by the parties: (1) no prior disciplinary record, (2) full and free disclosure to the board and a cooperative attitude throughout the proceedings, (3) evidence of good character and reputation, and (4) the imposition of other penalties and sanctions (e.g., criminal convictions and fines). *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (6).  The board also found that Burge had acknowledged the wrongful nature of his conduct, and showed remorse for his wrongdoing.

### B. Applicable Precedent

{¶ 31} The board recommended that Burge be suspended for one year, with six months stayed on the condition of no further misconduct. In determining the appropriate sanction, the board examined several disciplinary cases involving judges and other attorneys holding public office. The sanctions in these cases ranged from a six-month stayed suspension to an indefinite suspension. *See Disciplinary Counsel v. Elum*, 133 Ohio St.3d 500, 2012-Ohio-4700, 979 N.E.2d 289 (six-month stayed suspension); *Ohio State Bar Assn. v. Mason*, 152 Ohio St.3d 228, 2017-Ohio-9215, 94 N.E.3d 556 (indefinite suspension). The board found that the circumstances here were closest to *Ohio State Bar Assn. v. Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440, which involved a municipal-court judge who had been convicted of five misdemeanor offenses related to soliciting prostitution and amending a charge in favor of a defendant without the prosecutor's consent. In *Jacob*, we imposed a two-year suspension, with one year stayed.

{¶ 32} We recognize that Burge's misconduct was not identical to Jacob's, but we agree with the board that the sanction in *Jacob* is instructive. Burge and Jacob were each convicted of several misdemeanor offenses, and we have "historically imposed discipline" on attorneys who have engaged in criminal conduct. *Disciplinary Counsel v. Connor*, 105 Ohio St.3d 100, 2004-Ohio-6902, 822 N.E.2d 1235, ¶ 18. Burge, however, deserves a lesser sanction because unlike Jacob, Burge fully acknowledged the wrongful nature of his conduct and showed genuine remorse for his wrongdoing. *See Jacob* at ¶ 20. "The primary purpose of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of" the judiciary. *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 33. All of Burge's misconduct occurred during his time as a judge and was related to his judicial duties and responsibilities; since he resigned from the common pleas court following his criminal convictions, his misconduct is

unlikely to recur. Given the facts and the significant mitigating factors present here, including evidence of sincere contrition, we find that the board's recommended sanction achieves the purposes outlined in *O'Neill* and is reasonable and appropriate.

{¶ 33} For his part, Burge objects to the board's recommended sanction, but only to the extent that the board did not give him credit for time served under his interim felony suspension. After review, we find that Burge is entitled to credit for time served on the facts of this case.

### III. Conclusion

{¶ 34} Accordingly, James Michael Burge is suspended from the practice of law for one year, with six months of the suspension stayed on the condition that he engage in no further misconduct. We also grant Burge credit for time served under his interim felony suspension. If Burge fails to comply with the condition of the stay, the stay will be lifted and he will serve the full one-year suspension. Costs are taxed to Burge.

Judgment accordingly.

FRENCH, DEWINE, DONNELLY, and STEWART, JJ., concur.

O'CONNOR, C.J., and FISCHER, J., would not grant credit for time served under the interim suspension.

KENNEDY, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 35} The majority, relying upon *Ohio State Bar Assn. v. Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440, concludes that a one-year suspension with six months stayed is the appropriate sanction for respondent James Michael Burge's misconduct. I disagree. Because I find that some of Burge's misconduct is similar to Jacob's but that ultimately, Burge engaged in more misconduct than

Jacob, I dissent and would impose, at a minimum, a two-year suspension, with one year stayed—the same sanction we imposed against Jacob, *id.* at ¶ 21.

**{¶ 36}** When imposing sanctions for judicial misconduct, we "recognize the important role that judges play in society and their concomitant duty to act in an ethical manner." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 56. In *O'Neill*, we observed:

> "Because they are so important to our society, judges must be competent and ethical, and their actions must foster respect for their decisions as well as for the judiciary as a whole. Given that they hold positions of considerable authority and are entrusted with a great deal of power and discretion, judges are expected to conduct themselves according to high standards of professional conduct. Indeed, it is often said that judges are subject to the highest standards of professional behavior. Judges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust."

*Id.* at ¶ 57, quoting Shaman, Lubet & Alfini, *Judicial Conduct and Ethics*, Section 1.01, at 1 (3d Ed.2000). "The primary purpose of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of [the] institution." *Id.* at ¶ 33.

**{¶ 37}** To begin, Burge, like Jacob, was charged with violations of the Code of Judicial Conduct and the Rules of Professional Conduct for actions that resulted in criminal convictions. *See Jacob* at ¶ 8.

**{¶ 38}** Jacob was convicted of five misdemeanors: three counts of soliciting prostitution and two counts of falsification. *Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440, at ¶ 4. In this case, Count One of relator disciplinary

counsel's amended complaint stems from Burge's criminal convictions of six misdemeanors—three for tampering with records and three for falsification—for his failure to accurately report on his required annual financial-disclosure statements his interest in Whiteacre North, L.L.C. ("Whiteacre"), whose sole asset was an office building at 600 North Broadway, Lorain, Ohio. The jury found Burge guilty of the three counts of falsification in violation of R.C. 2921.13(A)(7), a first-degree misdemeanor, and the three counts of tampering with records in violation of R.C. 2913.42(A)(1), a third-degree felony, with which he was charged. *See State v. Burge*, 9th Dist. Lorain No. 16CA010936, 2017-Ohio-5836, ¶ 9-10. It was only because the trial court failed to specify the appropriate level of offense in the jury-verdict forms that the felony tampering counts were reduced to misdemeanor convictions. *Id*. at ¶ 11.

{¶ 39} Based on the convictions, the Board of Professional Conduct found that Burge had violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety) and Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that adversely reflects on the lawyer's honesty or trustworthiness).

{¶ 40} However unlike Jacob, Burge also engaged in financial misconduct. Count Two pertains to a five-month period when Burge held an ownership interest in Whiteacre and remained silent as to his financial relationship with attorneys who appeared before him and were tenants of Whiteacre's office building. Specifically, Burge appointed five of those attorneys to represent indigent criminal defendants and approved the payment of court-appointed-attorney fees to two others in cases pending before him. Burge directly benefited financially from those attorneys. For this misconduct, the board found that Burge violated Jud.Cond.R. 1.2 and 3.11(C)(3) (prohibiting a judge from engaging in otherwise permitted financial activities if they involve the judge in frequent transactions with or continuing

business relationships with lawyers or other persons likely to come before the judge's court).

**{¶ 41}** Similar to Burge, Jacob also engaged in impropriety on the bench by amending a charge and falsifying an entry. *Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440, at ¶ 4, 6. But Burge did more; his conduct was broader in scope than Jacob's isolated impropriety on the bench.

**{¶ 42}** In Count Three, Burge was charged with using official court stationary to write a letter insulting a state representative who had previously been an appellate judge. Also, while presiding over criminal cases, he directed racially inappropriate and demeaning comments toward criminal defendants. For this misconduct, the board found that Burge violated Jud.Cond.R. 1.2 and 2.8(B) (requiring a judge to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity).

**{¶ 43}** In Count Four, Burge was charged with allegations of improper ex parte communication with a criminal defendant over whose trial Burge had presided. For this misconduct, the board found that Burge violated Jud.Cond.R. 1.2 and 2.9(A) (prohibiting a judge from initiating, receiving, permitting, or considering ex parte communications).

**{¶ 44}** Moreover, in Count Five, Burge was charged with refusing to apply controlling precedent in a criminal trial. This resulted in the defendant's acquittal on a rape charge, although the defendant was convicted of a lesser included offense. In another criminal matter, he failed to appoint a qualified interpreter for a Spanish-speaking defendant; instead, Burge acted as the interpreter. For this misconduct, the board found that Burge violated Jud.Cond.R. 1.2 and 2.2 (requiring a judge to uphold and apply the law and perform the duties of judicial office fairly and impartially).

{¶ 45} The misconduct alleged in Counts Three, Four, and Five is closer to Judge O'Neill's. In *O'Neill*, we imposed a two-year suspension with one year stayed for judicial misconduct that included ex parte conversations, failure to follow the law, misrepresentations in the course of her judicial duties, and being intemperate on the bench. 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 20, 28, 55. However, Burge's violations are not as numerous or persistent as those committed by Judge O'Neill.

{¶ 46} I agree with the majority that there is no one case like Burge's case. Majority opinion at ¶ 31-32. By imposing a one-year suspension with six months stayed, the majority focuses mainly on Burge's misdemeanor convictions. The majority reasons that Burge's misconduct is unlikely to recur because all of it occurred during his time as a judge and was related to his judicial duties and responsibilities and he has since resigned his position as judge. Majority opinion at ¶ 32. This court has not previously minimized judicial misconduct because the respondent was no longer serving as a judge when we issued our judgment. *See, e.g., Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440; *Ohio State Bar Assn. v. McCafferty*, 140 Ohio St.3d 229, 2014-Ohio-3075, 17 N.E.3d 521. In fact, Jacob also resigned, and although this court considered that in mitigation, we still considered all his misconduct and suspended him for two years with one year stayed. *Jacob* at ¶ 20-21.

{¶ 47} The majority's decision to rely on *Jacob* but to impose upon Burge a lesser sanction than Jacob received raises many questions. Is the majority saying that Jacob's crimes are worse than Burge's intentional acts of financial misconduct? Or does Jacob's failure to acknowledge the wrongful nature of all his misconduct, *id.* at ¶ 9, 12, make his misconduct more significant than Burge's egregious behavior from the bench?

{¶ 48} Maybe the majority is saying that Burge's misconduct from the bench was nothing more than an aberration because he will no longer serve as a

judge. Or does the majority believe that because Burge will return to the practice of law as a lawyer and not as a judge, and therefore cannot engage in the judicial misconduct that occurred while he was on the bench, he should not be held accountable to the degree that other judges have been?

{¶ 49} The majority's reasoning fails to take into account the primary purpose in disciplining a judge—"to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of [the judicial system]," *O'Neill,* 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, at ¶ 33. This purpose is satisfied only by considering *all* of Burge's misconduct and not focusing so heavily on the criminal convictions, as the majority does, *see* majority opinion at ¶ 31-32. "Judges are accountable for much more than merely conducting themselves within the bounds of the criminal law." *Disciplinary Counsel v. Hoskins*, 119 Ohio St.3d 17, 2008-Ohio-3194, 891 N.E.2d 324, ¶ 41. (Judge permanently disbarred for deceitful conduct and various abuses of his office despite the fact that his actions did not result in criminal convictions).

{¶ 50} All of Burge's misconduct has had a profound effect on the integrity of the judiciary. " 'Where those whose job it is to enforce the law break it instead, the public rightfully questions whether the system itself is worthy of respect.' " *Disciplinary Counsel v. Gallagher*, 82 Ohio St.3d 51, 53, 693 N.E.2d 1078 (1998), quoting *In re Hughes*, 640 N.E.2d 1065, 1067 (Ind.1994). Additionally, " 'discourtesy * * * on the part of a judge is particularly egregious because it undermines respect for the law in a most insidious manner,' " leaves the affected litigant " 'without recourse,' " and results in " 'an irreparable loss of respect for the system that tolerates such behavior.' " *O'Neill* at ¶ 37, quoting *In re Kellam*, 503 A.2d 1308, 1312 (Me.1986).

{¶ 51} When imposing sanctions for judicial and professional misconduct, we consider several relevant factors, including the ethical duties violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), any other relevant

16

factors, and the sanctions imposed in similar cases. *Mason*, 152 Ohio St.3d 228, 2017-Ohio-9215, 94 N.E.3d 556, at ¶ 13. The aggravating factors are that Burge committed multiple violations and exhibited a dishonest or selfish motive in failing to disclose his relationship with Whiteacre and his receipt of rent payments from the tenant-lawyers who appeared before him in court. Gov.Bar R. V(13)(2) and (4). Additionally, in accordance with the court's independent review and final authority in disciplinary cases, *see Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 708 N.E.2d 193 (1999), paragraph one of the syllabus, I find that Burge engaged in a pattern of misconduct, Gov.Bar R. V(13)(B)(3), and harmed vulnerable persons, for example, the criminal defendants to whom he uttered racially inappropriate and demeaning comments, Gov.Bar R. V(13)(B)(8). In mitigation, Burge has no prior disciplinary record, he made full and free disclosure to the board and had a cooperative attitude throughout the proceedings, he presented evidence of good character and reputation, and other penalties and sanctions were imposed. Gov.Bar R. V(13)(C)(1), (4), (5), and (6).

{¶ 52} After considering all of Burge's misconduct, i.e., his criminal convictions *and* his misconduct on the bench, in addition to the mitigating and aggravating factors and the sanctions imposed in *Jacob* and *O'Neill,* I would impose a two-year suspension with one year stayed on the condition that he commit no further misconduct. This sanction would show that we hold judges to the highest possible standards of ethical conduct and would restore integrity to the judiciary and the public's confidence in it.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Jennifer A. Bondurant, Assistant Disciplinary Counsel, for relator.

Montgomery, Rennie & Jonson, George D. Jonson, and Lisa M. Zaring, for respondent.

_____