[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Jacob,* Slip Opinion No. 2017-Ohio-2733.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-2733

OHIO STATE BAR ASSOCIATION *v*. JACOB.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Jacob,* Slip Opinion No. 2017-Ohio-2733.]

*Attorneys—Judges—Misconduct—Conviction of multiple misdemeanors, including solicitation and falsification—Two-year suspension with second year stayed on condition.*

(No. 2016-1488—Submitted February 8, 2017—Decided May 10, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-019.

_____

**Per Curiam.**

{¶ 1} Respondent, Harry Joseph Jacob III, of Solon, Ohio, Attorney Registration No. 0008620, was admitted to the practice of law in Ohio in 1981. Jacob served as a Bedford Municipal Court judge from 2010 until he resigned in

October 2014 after he was found guilty of soliciting prostitution and falsifying a court record.

{¶ 2} In March 2016, relator, the Ohio State Bar Association, filed an amended complaint against Jacob charging him with judicial and professional misconduct for the activities that led to his criminal convictions. Jacob stipulated to most, but not all, of the allegations against him, and the matter proceeded to a hearing before a three-member panel of the Board of Professional Conduct. The board issued a report finding that Jacob engaged in the charged misconduct and recommending that we sanction him with a two-year suspension, with the second year stayed. Neither party has objected to the board's report and recommendation.

{¶ 3} Based upon our review of the record, we accept the board's findings of misconduct and agree with its recommended sanction.

**Misconduct**

{¶ 4} In April 2014, a Cuyahoga County grand jury indicted Jacob—while he was serving as a municipal court judge—on 21 counts of criminal conduct, ranging from felony tampering-with-evidence and promoting-prostitution charges to misdemeanor solicitation and falsification offenses. In September 2014, after a five-day bench trial, the Cuyahoga County Court of Common Pleas found him guilty of five misdemeanors: three counts of solicitation under R.C. 2907.24(A)(1), one count of falsification under R.C. 2921.13(A)(11), and one count of falsification under R.C. 2921.13(A)(13). As to the remaining charges, the court either acquitted Jacob or ordered the charges dismissed. After his convictions but before appearing for his sentencing, Jacob resigned from the bench. In October 2014, the court sentenced him to serve a total of 60 days in jail, pay $2,500 in fines, complete a two-year term of probation, and submit to six months of home monitoring upon his release from jail. He immediately served his jail time, paid his fine, and later successfully completed probation and home monitoring.

**{¶ 5}** In November 2015, the Eighth District Court of Appeals affirmed Jacob's convictions. *See State v. Jacob*, 2015-Ohio-4760, 50 N.E.3d 279 (8th Dist.) The court found that there was "sufficient and substantial evidence that Jacob solicited at least three women to engage in sexual activity for hire." *Id.* at ¶ 20. In describing the evidence against Jacob, the court noted that he had first responded to an advertisement in which a woman offered massages, but after they met in person, the massages evolved into sex for money. Jacob continued to request the woman's services and met her at various hotels across the state. He later engaged in three-way sexual acts with the woman and a second prostitute, asked the second prostitute to engage in individual sexual acts with him, and also solicited prostitution services from a third woman. *Id.* at ¶ 3-5.

**{¶ 6}** The Eighth District also described the evidence supporting Jacob's falsification convictions, which arose from an unrelated case pending on his municipal court docket. As explained by the court of appeals, a defendant, David Holt, made an unscheduled appearance before Jacob and requested to plead guilty to a pending domestic-violence charge. Jacob informed Holt that a domestic-violence conviction would prevent him from owning a firearm and result in other collateral consequences. Jacob then sua sponte reduced the domestic-violence charge to disorderly conduct and found Holt guilty of the amended charge. Jacob never read Holt his rights, asked him if he had consulted with an attorney, or heard from the alleged victim. Further, Jacob amended the charge without the city prosecutor's presence or consent, and he signed and journalized an entry that falsely indicated that the prosecutor had authorized the change. *Id.* at ¶ 6-10, 22-24.

**{¶ 7}** In his appeal of the falsification convictions, Jacob admitted that he had signed an inaccurate entry but argued that he did not actually know that the entry was false because he had merely signed a boilerplate form. *Id.* at ¶ 10, 22, 24. The Eighth District, however, "emphatically reject[ed] this claim," concluding,

> The facts establish that he was fully aware of his duplicitous actions and tried to hide them. Jacob knew that the journal entry was false because he was the one who changed it; he changed the entry to make it appear that the prosecutor authorized the amendment to the original charge, and then he signed off on the entry. This clearly demonstrates that he knowingly falsified the journal entry, not just signed a falsified journal entry.

*Id.* at ¶ 23.

{¶ 8} At his disciplinary hearing, Jacob admitted that his consorting with prostitutes amounted to sanctionable misconduct and that he improperly circumvented the judicial process by sua sponte amending the charge against Holt. He also took responsibility for signing the inaccurate journal entry. Based on this conduct, the parties stipulated and the board agreed that Jacob violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety) and Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Consistent with our decision in *Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, the board expressly found that Jacob's conduct was sufficiently egregious to constitute a separate violation of Prof.Cond.R. 8.4(h).

{¶ 9} Jacob did not stipulate, however, to relator's charge that he had also violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Jacob acknowledged that in Holt's case, he had signed a journal entry indicating that he acted "upon motion of the prosecutor." But according to Jacob, his secretary had selected the wrong form from several available templates, and he had not reviewed the form before approving it. Jacob testified that he therefore did not intend to give the impression that the prosecutor had approved amending the charge. The board noted, however, that the Eighth District had "soundly rejected" this argument and ultimately found a Prof.Cond.R. 8.4(c) violation.

{¶ 10} We agree with the board's findings of misconduct.

## Sanction

{¶ 11} When imposing sanctions for judicial and professional misconduct, we consider several relevant factors, including the ethical duties violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See Disciplinary Counsel v. Oldfield*, 140 Ohio St.3d 123, 2014-Ohio-2963, 16 N.E.3d 581, ¶ 17.

### *Aggravating and mitigating factors*

{¶ 12} The board found the following aggravating factors: Jacob had a selfish motive, i.e., sexual gratification, he engaged in a pattern of misconduct, he committed multiple offenses, and he refused to acknowledge the wrongful nature of some of his misconduct. *See* Gov.Bar R. V(13)(B)(2), (3), (4), and (7).

{¶ 13} In mitigation, the board determined that Jacob had no prior discipline, he made a timely and good-faith effort to rectify the consequences of his misconduct by resigning from his judgeship, he had a cooperative attitude toward the disciplinary proceedings, he demonstrated good character and reputation, he had already served a criminal sentence for his misconduct, and he sought other interim rehabilitation, including the assistance of the Ohio Lawyers Assistance

Program and a personal psychiatrist. *See* Gov.Bar R. V(13)(C)(1), (3) through (6), and (8).

*Applicable precedent*

{¶ 14} To support its recommended sanction, the board focused on several cases in which we suspended judges for engaging in misconduct while acting in their judicial capacities, including issuing false entries or orders.

{¶ 15} For example, the board cited *Disciplinary Counsel v. Hale*, 141 Ohio St.3d 518, 2014-Ohio-5053, 26 N.E.3d 785, in which a municipal court judge unilaterally dismissed a speeding ticket for his personal attorney in a journal entry that falsely stated that the dismissal was at the prosecutor's request—although the prosecutor had not in fact consented to the dismissal. We noted that the judge's false entry and his effort to cover up that misconduct were "serious violations of his ethical duties as both an attorney and a judge," and we found that as an aggravating factor, he had given false testimony in the course of his disciplinary proceeding. *Id.* at ¶ 39. But we also observed that he had an otherwise unblemished 30-year career, his misconduct was limited to a single case, no litigants suffered harm as a result of his misconduct, and he took responsibility for his actions and resigned from the bench. Under those circumstances, we decided that a six-month suspension was appropriate. *Id.* at ¶ 38-40.

{¶ 16} The board also cited *Disciplinary Counsel v. Medley*, 104 Ohio St.3d 251, 2004-Ohio-6402, 819 N.E.2d 273, in which a municipal court judge engaged in repeated acts of misconduct in various cases pending before him. Specifically, in one criminal case, the judge accepted a defendant's guilty pleas to three charges in exchange for the dismissal of a fourth charge—without the presence or consent of the prosecutor. In a separate matter, the judge issued ex parte orders to prevent a creditor from collecting on a default judgment against a local political-party official. In one of those orders, the judge falsely stated that the official had "appeared in open court," although the official had instead met the judge in his

office. In addition, we found that the judge had implemented procedures in debt-collection cases that were predisposed to favor plaintiff-creditors and that disregarded established law. *Id.* at ¶ 27-37. Significant aggravating factors included that we had previously disciplined the judge for judicial misconduct and that he had refused to acknowledge the wrongfulness of his actions. *Id.* at ¶ 38.

{¶ 17} In formulating a sanction, we noted that because the judge had "misrepresented facts in a journal entry * * *, an actual suspension [was] warranted based solely on that conduct." *Id.* at ¶ 40. And considering Medley's dishonesty combined with his other ethical violations, we suspended him for 18 months, with six months stayed. *Id.* at ¶ 41-43.

{¶ 18} The board also relied on *Disciplinary Counsel v. Squire*, 116 Ohio St.3d 110, 2007-Ohio-5588, 876 N.E.2d 933, in which a judge committed 40 violations of the Code of Judicial Conduct and 12 violations of the Code of Professional Responsibility in several cases over a three-year period. Her pervasive misconduct included issuing two entries containing false statements, ignoring clear legal requirements, abusing her judicial contempt power, engaging in improper ex parte communications and judicial investigations, and failing to recuse herself in cases in which she was biased. We found that Squire's "intemperance and complete disrespect for litigants and attorneys who appeared before her, coupled with her total failure to take responsibility for her misconduct," mandated a two-year suspension, with the second year stayed. *Id.* at ¶ 112.

{¶ 19} In this case, Jacob's in-court misconduct—i.e., his actions in Holt's case—and the relevant aggravating and mitigating factors are more similar to the facts in *Hale* than to either *Medley* or *Squire*. Jacob, however, was also convicted on three counts of solicitation. "[W]e have, historically, imposed discipline for an attorney's criminal conduct * * *." *Disciplinary Counsel v. Connor*, 105 Ohio St.3d 100, 2004-Ohio-6902, 822 N.E.2d 1235, ¶ 18. And we have also noted that "[m]embers of the judiciary have an even greater duty to obey the law, and the

breach of that duty has been met with the full measure of our disciplinary authority." *Id.*

{¶ 20} By engaging in the criminal activity in this case, Jacob failed to uphold the integrity of the judiciary, and he diminished public confidence in our branch of government. Considering that Jacob continued to deny making misrepresentations in the journal entry, the board concluded that his "egregious conduct, both inside and outside the courtroom," warrants a two-year suspension, with one year stayed. Based on Jacob's ethical violations, the aggravating and mitigating factors, and our review of applicable precedents, we find that the board's recommendation is reasonable and appropriate.

**Conclusion**

{¶ 21} For the reasons explained above, we adopt the board's recommended sanction. Harry Joseph Jacob III is hereby suspended from the practice of law for two years, with the second year stayed on the condition that he commit no further misconduct. If Jacob fails to comply with this condition, the stay will be lifted and he shall serve the entire two-year suspension. Costs are taxed to Jacob.

Judgment accordingly.

O'DONNELL, KENNEDY, O'NEILL, and DEWINE, JJ., concur.

O'CONNOR, C.J., and FRENCH, J., dissent and would not stay any portion of the suspension.

FISCHER, J., not participating.

_____

Plunkett Cooney and Amelia A. Bower; and Eugene P. Whetzel, Bar Counsel, for relator.

Murman & Associates and Michael E. Murman, for respondent.

_____