[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Berry*, Slip Opinion No. 2021-Ohio-3864.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3864

DISCIPLINARY COUNSEL *v.* BERRY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Berry*, Slip Opinion No. 2021-Ohio-3864.]**

*Attorneys—Misconduct—Code of Judicial Conduct—Violation of Jud.Cond.R. 1.2, requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety— Conditionally stayed six-month suspension.*

(No. 2021-0747—Submitted August 3, 2021—Decided November 3, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2021-005.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Judge Theodore Newton Berry, of Cincinnati, Ohio, Attorney Registration No. 0042025, was admitted to the practice of law in Ohio in 1989. Berry has been a judge of the Hamilton County Municipal Court since 2006.

**{¶ 2}** In March 2021, relator, disciplinary counsel, charged Berry with violating the Code of Judicial Conduct for sending inappropriate Facebook messages and videos to a court employee. Berry stipulated to the charged misconduct, and the parties jointly recommended that he be publicly reprimanded for his behavior. After a hearing, a three-member panel of the board found that Berry had engaged in the stipulated misconduct, agreed that he should be publicly reprimanded, and recommended that he also complete sexual-harassment-prevention training. The board issued a report adopting the panel's finding of misconduct but recommending that we impose a conditionally stayed six-month suspension. Neither party has objected to the board's report and recommendation.

**{¶ 3}** Based on our review of the record, we adopt the board's finding of misconduct and recommended sanction.

## Misconduct

**{¶ 4}** In August 2019, Jane Doe[1] began working as a court reporter for the Hamilton County Municipal Court. Sometime thereafter, Berry sent her a friend request on Facebook. At the time Doe accepted the request, she and Berry did not know each other, as she was not a court reporter assigned to his courtroom. In October 2019, Doe "liked" some pictures that Berry had posted on Facebook relating to the courthouse, and he sent her a private message asking about her connection to the courthouse. They exchanged messages, and Berry invited her to stop by his chambers to meet in person.

**{¶ 5}** About a week later, Berry sent Doe a Facebook message wishing her a good weekend and stating, "You're 'Lurking' and didn't come down to my

---

1. Presumably to protect her individual privacy rights and interests, the parties and the board did not identify Doe in the public filings.

Chambers to visit." Doe responded that she would stop by soon. After Doe and Berry exchanged several more messages—on various topics, including their respective divorces—he asked for her cell-phone number and suggested that they talk over the weekend. The parties stipulated that if Doe had been called to testify at Berry's disciplinary hearing, she would have stated that she gave the judge her phone number because she felt like she could not refuse, considering his status as a judge.

{¶ 6} Berry called Doe on a Saturday. According to Doe, Berry sounded intoxicated and used profanity, although Berry denied that he was drunk and had no specific recollection of using profanity. Also during the call, Berry asked Doe out to lunch but she declined.

{¶ 7} A few days later, Berry sent Doe a Facebook message asking her to stop by his office and stating that he had "an 'Offer you can't Refuse'!!" Doe did not stop by and later advised him in a message that she had gotten busy with work. At his disciplinary hearing, Berry testified that he had intended to offer Doe tickets to an event for her and her children.

{¶ 8} A couple days after asking Doe to stop by his office, Berry sent her a Facebook message stating that he was on a "Staycation" and asking her out for lunch or drinks. Specifically, his message stated:

> I'd like to invite you to accompany me for lunch or for drinks after work. I Hope I'm not being too forward or pushy in inviting to do something. So, simply le[t] me know if you'd like to meet for lunch or drinks this coming week or otherwise. I'm a "Big boy" so I know how to accept and respect the word, "NO". So please be Honest in your response. Again, I hope you're not offended because this is not my intent whatsoever. So, kindly RSVP either way. TY!!

{¶ 9} Doe did not respond to the message, and their Facebook communications thereafter became increasingly one-sided. After sending the message quoted above, Berry sent Doe 72 messages; she replied to only 15.

{¶ 10} A majority of the 72 messages were images, memes, or links to videos that Berry had forwarded from the Internet. Many of those messages were overtly partisan and vulgar. For example, Berry sent Doe a video showing smoke and then flames emanating from the body of former President Donald J. Trump while he attended a prayer session. Berry also sent Doe a profane cartoon image of Santa Claus appearing to defecate down a chimney of United States Senator Mitch McConnell's house. With the cartoon image, the judge sent a message stating, "A Special Delivery to 'Moscow Mitch' for Christmas, and for his upcoming, pre-determined 'Shit Show' in the Complicit, pre-determined, pre-Judged, Senate Impeachment 'Trial'!!" In addition, Berry forwarded Doe a video from a comedian playing a character known as the "Liberal Redneck," who used profanity while insulting supporters of former President Trump.

{¶ 11} Some of Berry's messages contained links to videos containing offensive and sexually suggestive content—though Berry did not personally create the content. For example, he sent Doe a link to a video entitled "How to Build a Resume for a Hoe," in which a well-known actress used crude language while joking about assisting female prostitutes with building a resume. Berry also sent Doe a link to a viral video entitled "How To End A First Date," in which a woman and a man used sexually explicit language while purporting to be honest with each other at the end of their first date. For example, the woman agreed to engage in certain sex acts, and in exchange, the man agreed to buy her gifts.

{¶ 12} Doe brought the messages to the attention of her boss and a colleague, who informed court administration. After an investigation, court administration referred the matter to relator. The parties stipulated that Berry wanted to apologize to Doe and convey to her that he had not intended to make her

4

uncomfortable, but he concluded that it would be inappropriate for him to directly communicate with her. Therefore, he asked the judge for whom she worked to pass along his apology. At his disciplinary hearing, Berry also testified that he had deactivated his Facebook account and had no other presence on social media.

{¶ 13} Based on this conduct, the parties stipulated and the board found that Berry violated Jud.Cond.R. 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety). We agree with the board's finding of misconduct.

**Sanction**

{¶ 14} When imposing sanctions for judicial misconduct, we consider all relevant factors, including the ethical duties that the judge violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 15} The board found two aggravating factors: Berry had a selfish motive and he abused his judicial position when he engaged with Doe, a court employee. *See* Gov.Bar R. V(13)(B)(2). The board also noted that because Doe did not testify at the judge's disciplinary hearing, there was no evidence indicating what impact, if any, the judge's conduct had on her. As for mitigating factors, the board found that Berry has a clean disciplinary record, made a timely and good-faith effort to rectify the consequences of his misconduct, and made full and free disclosures to the board and had a cooperative attitude toward the disciplinary proceedings. *See* Gov.Bar R. V(13)(C)(1), (3), and (4).

{¶ 16} Because the board could not find any Ohio precedent involving similar judicial misconduct, the board reviewed cases in other jurisdictions for guidance. For example, the board reviewed *In re Complaint of Judicial Misconduct*, 751 F.3d 611 (2014), in which a federal district court judge sent, from his court email address, a racist and partisan email to a small group of friends about

former President Barack Obama. After the email reached a reporter and was quoted in a newspaper, a five-judge special committee investigated the matter and found that the judge had sent hundreds of inappropriate emails—mostly forwarded cartoons, articles, video links, or jokes—to recipients that included the judge's personal and professional contacts and court staff. Most of the emails were political in nature; some showed disdain and disrespect for liberal political leaders, minority groups, and certain faiths; and some contained sexual topics and were disparaging to women. A federal judicial council publicly reprimanded the judge and ordered that no new cases be assigned to him for 180 days. The council also ordered that he complete training on judicial ethics and racial awareness and elimination of bias and that he issue a public apology—although the remedial actions were later declared inoperative because the judge resigned from the bench.

{¶ 17} The board also reviewed a disciplinary matter against a Tennessee judge who sent inappropriate messages—ranging from flirtatious to overtly sexual—to multiple women on social-media platforms. The recipients of the judge's messages included a legal professional associated with a law firm that had appeared before the judge and a litigant who had formerly had a child-custody matter before him. Considering that judges are required to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary, the Tennessee Board of Judicial Conduct noted that "[i]nappropriate messages sent by a sitting judge to anyone, much less to those who have ties to the court system like former litigants and legal professionals, do not inspire such confidence." Tennessee Board of Judicial Conduct, Public Reprimand, File No. B20-8220 (Oct. 5, 2020), available at https://www.tncourts.gov/sites/default /files/docs/judge_jonathan_young_reprimand_2020_10_05.pdf (accessed Oct. 12, 2021) [https://perma.cc/62Y9-CGYH]. The Tennessee board publicly reprimanded the judge, imposed a conditionally stayed 30-day suspension, and ordered him to, among other things, complete judicial-ethics training relating to social media.

{¶ 18} The panel here concluded that Berry's conduct warranted a public reprimand. But the panel also found that Berry had demonstrated a lack of sensitivity to the issue of sexual harassment and therefore recommended that he complete three hours of continuing judicial education on sexual-harassment-prevention training. The board disagreed with the panel's conclusion and instead recommended that Berry be suspended for six months, with the suspension stayed on conditions, including that he complete a minimum of eight hours of continuing judicial education on sexual harassment. The board increased the recommended sanction because of the existence of two aggravating factors and our precedent holding judges to the highest standards of ethical conduct.

{¶ 19} "Judges are in a position to exert power over their employees, the attorneys who practice before them, and the litigants in cases over which they preside," *Disciplinary Counsel v. Horton*, 158 Ohio St.3d 76, 2019-Ohio-4139, 140 N.E.3d 561, ¶ 72, and—as this matter shows—over other persons associated with the justice system. "Recognizing this power, we have held that ' "[j]udges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust." ' " (Brackets added in *Horton*.) *Id.*, quoting *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 57, quoting Shaman, Lubet & Alfini, *Judicial Conduct and Ethics* 1 (3d Ed.2000). In short, "[j]udges should comport themselves in a manner that is beyond reproach." *Id.* And "[j]udges should maintain the dignity of judicial office at all times and avoid both impropriety and the appearance of impropriety in their professional *and* personal lives." (Emphasis added.) Code of Judicial Conduct, Preamble, Section 2.

{¶ 20} Berry sent numerous inappropriate Facebook messages to a court employee; many of the messages were politically partisan and some contained vulgar and sexually explicit content. The judge's conduct undermined the public's confidence in the impartiality and integrity of the judiciary. "The primary purpose

of judicial discipline is to protect the public, guarantee the evenhanded administration of justice, and maintain and enhance public confidence in the integrity of this institution." *Disciplinary Counsel v. Russo*, 124 Ohio St.3d 437, 2010-Ohio-605, 923 N.E.2d 144, ¶ 14. With that purpose in mind, we conclude that the board's recommended sanction is appropriate in this case.

### Conclusion

{¶ 21} Theodore Newton Berry is hereby suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that he (1) complete a minimum of eight hours of continuing judicial education on the subject of sexual harassment within 90 days of our disciplinary order and (2) refrain from committing any further misconduct. If Berry fails to comply with either condition of the stay, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Berry.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Matthew A. Kanai, Assistant Disciplinary Counsel, for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

_____