**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Bell*, **Slip Opinion No. 2024-Ohio-876.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-876

DISCIPLINARY COUNSEL *v*. BELL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bell*, Slip Opinion No. 2024-Ohio-876.]**

*Attorneys—Misconduct—Violation of Rules of Professional Conduct—Indefinite suspension with no time credited for interim suspension is appropriate sanction for attorney convicted of a felony stemming from attempt to engage in sexually motivated conduct with underage victim.*

(No. 2023-0739—Submitted July 18, 2023—Decided March 13, 2024.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2022-043.

_____

**KENNEDY, C.J.**

{¶ 1} Respondent, Joseph Michael Bell, of Warren, Ohio, Attorney Registration No. 0095600, was admitted to the practice of law in Ohio in 2016. On June 2, 2022, this court suspended his license on an interim basis following his

felony conviction on one count of unlawful use of a telecommunications device, and that suspension remains in effect. *See In re Bell*, 167 Ohio St.3d 1219, 2022-Ohio-1836, 191 N.E.3d 467.

{¶ 2} In an October 2022 complaint, relator, disciplinary counsel, charged Bell with professional misconduct arising from his felony conviction. Bell waived a probable-cause determination and, in his answer, admitted some of relator's factual allegations. The parties jointly submitted comprehensive stipulations of fact, misconduct, and aggravating and mitigating factors, though they did not agree on a recommended sanction.

{¶ 3} After conducting a hearing, a panel of the Board of Professional Conduct issued a report finding that Bell had committed the charged misconduct and recommended that we suspend Bell for two years with six months' credit for the time he had served under his interim felony suspension and that we place certain conditions on his reinstatement to the profession. The board adopted the panel's findings of fact and conclusions of law and recommends that we suspend Bell from the practice of law for two years with six months' credit for the time served under his interim felony suspension. We adopt the board's findings of misconduct but not its recommended sanction. Instead, we impose an indefinite suspension with no credit for any of the time Bell has served under his interim felony suspension.

## MISCONDUCT

{¶ 4} Bell was hired by the Cuyahoga County Prosecutor's Office in February 2020. He served as an assistant prosecutor assigned to the child-support unit of the juvenile division. While at work on July 30, 2021, Bell visited a website on his personal phone that listed profiles of sex workers. At 10:27 a.m. that day, Bell sent a text message to a phone number that he had obtained from a profile on that website. He believed that he was texting a female sex worker, but he was actually texting an undercover officer with the Mahoning Valley Human Trafficking Task Force.

{¶ 5} In the course of that text-message exchange, the undercover officer asked Bell his age and race and told Bell, "[I']m alot younger than you." (Spelling sic.) Bell responded with texts asking, "How young[?]" and added, "If I'm too old I understand." The undercover officer replied, "I[']m 15," to which Bell responded, "You're a little too young." When the undercover officer protested, Bell responded, "15 isn't even legal." Bell also stated, "I don't want to be [a jerk] but when someone that young is involved in this kinda thing I worry they are being forced against their will." The undercover officer replied, "Hell no."

{¶ 6} At that point, Bell responded, "Okay[.] You sure you aren't looking for someone closer to your age[?]" Then he asked, "How much[?]" The undercover officer responded, "[D]epends [on] wat u want daddy." (Spelling sic.) Bell requested an hour of "[h]alf and half," and when prompted by the undercover officer, Bell explained that that meant "Bj and sex." The undercover officer quoted a price of $80 and asked, "[C]ool? [T]ime?" Bell replied, "Yeah. Depends where are you[?]" The undercover officer told him, "[C]anfield." Bell responded, "Hmm wouldn't likely be able to get there till after 6." The undercover officer replied, "[T]hat's cool jus [sic] [hit me up] around then then." Although Bell continued texting the undercover officer after he left work, he did not follow through with the meeting.

{¶ 7} On August 5, 2021, the undercover officer text-messaged Bell again and sent him a photo of a clothed female. Bell replied with a photo of himself with his dog. Bell told the undercover officer that since she was 15, she was too young for him to do anything with "besides talk." The conversation ended without any plans to meet. That was the last conversation between Bell and the undercover officer.

{¶ 8} On August 20, 2021, Bell was arrested at his office in the juvenile division of the Cuyahoga County Prosecutor's Office and was simultaneously terminated from his employment. In November 2021, Bell was indicted on one

count of importuning in violation of R.C. 2907.07(D)(2), a fifth-degree felony. He pleaded guilty to an amended count of unlawful use of a telecommunication device in violation of R.C. 2913.06(A), also a fifth-degree felony, and he was sentenced to one year of community control. As a condition of that sentence, he was ordered to continue participating in counseling and taking all medications as prescribed.

{¶ 9} The parties stipulated, the panel and board found, and we agree that Bell's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and that his conduct was sufficiently egregious to constitute a separate violation of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

## RECOMMENDATIONS OF THE PARTIES AND BOARD

{¶ 10} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 11} The parties stipulated and the panel and board found that just one aggravating factor is present in this case: Bell acted with a dishonest or selfish motive. *See* Gov.Bar R. V(13)(B)(2). As for mitigating factors, the parties stipulated and the panel and board agreed that Bell has a clean disciplinary record, had made full and free disclosure to the board and exhibited a cooperative attitude toward the disciplinary proceedings, had submitted evidence of his good character and reputation, and had had other penalties or sanctions imposed for his misconduct. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (6). Bell testified that he was receiving counseling, that he was taking prescribed medication for anxiety and depression, and that he had signed a release for relator to obtain access to his counseling records. However, he did not attempt to establish a diagnosis of anxiety

or depression as a mitigating factor under Gov.Bar R. V(13)(C)(7). Without evidence that the diagnosed mental-health disorder contributed to the misconduct, we do not give any mitigating weight to a diagnosed mental-health disorder. *See Disciplinary Counsel v. Goebl*, 152 Ohio St.3d 498, 2018-Ohio-5, 98 N.E.3d 223, ¶ 11.

{¶ 12} In closing argument before the panel, relator recommended that we indefinitely suspend Bell with no credit for the time he had served under his interim felony suspension. In support of that recommended sanction, relator cited three cases in which this court imposed indefinite suspensions on attorneys for engaging in sexually oriented offenses involving minors: *Disciplinary Counsel v. Goldblatt*, 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091; *Disciplinary Counsel v. Cosgrove*, 165 Ohio St.3d 280, 2021-Ohio-2188, 178 N.E.3d 481; and *Disciplinary Counsel v. Schwarz*, 160 Ohio St.3d 194, 2020-Ohio-1542, 155 N.E.3d 830.

{¶ 13} In *Goldblatt*, an attorney attempted to arrange a sexual encounter with an underage girl. *Goldblatt* at ¶ 6. Unwittingly making the arrangements with an undercover FBI agent, Goldblatt agreed to pay $200 to do as much sexually with the child as that amount would buy, and after making those arrangements by phone, he left his office, went to his bank and withdrew $200, and drove to the park to meet the undercover agent whom he believed to be a pimp and the young girl. *Id.* at ¶ 6, 12. During his disciplinary proceeding, Goldblatt attempted to downplay his conduct, suggesting that he had gone to the park only to discuss a potential sexual encounter and that he had not intended to meet with the young girl. *Id.* at ¶ 13. This court indefinitely suspended Goldblatt from the practice of law and afforded him no credit for the time he had served under his interim suspension. *Id.* at ¶ 30.

{¶ 14} In *Cosgrove*, this court imposed an indefinite suspension on an attorney who had participated in an online chat, had arranged to meet a person he believed to be a 15-year-old girl for sexual activity, and, like Goldblatt, had driven to the agreed meeting place where he was arrested. *See Cosgrove* at ¶ 5, 13.

Similarly, in *Schwarz*, this court indefinitely suspended an attorney who had exchanged sexually charged text messages with, solicited, and arranged to meet an undercover officer posing as a 15-year-old boy at a restaurant. *Schwarz* at ¶ 6, 13.

{¶ 15} The panel acknowledged that like this case, each of the cases cited by relator involved an attorney who had planned a sexual encounter with an undercover officer whom the attorney believed to be an underage person. However, the panel distinguished the facts of this case from *Goldblatt*, *Cosgrove*, and *Schwarz* on the ground that, unlike the attorneys in those cases, Bell did not take additional steps in furtherance of the proposed meeting. The panel stated that in contrast to *Goldblatt*, *Cosgrove*, and *Schwarz*, Bell had neither contacted the undercover officer to arrange the location for a meeting nor traveled to where he had been told the young girl was located. The panel further credited Bell for ceasing all communication with the undercover officer and for Bell's taking the stance that the 15-year-old girl was too young for any activity with him besides talking when the undercover agent attempted to resume communication.

{¶ 16} The panel also considered three cases cited by Bell in which this court imposed term suspensions of varying lengths for attorney and judicial misconduct that consisted of or included violations of Prof.Cond.R. 8.4(h): *Ohio State Bar Assn. v. Jacob*, 150 Ohio St.3d 162, 2017-Ohio-2733, 80 N.E.3d 440; *Disciplinary Counsel v. Mason*, 156 Ohio St.3d 398, 2019-Ohio-1269, 128 N.E.3d 183; and *Disciplinary Counsel v. Dann*, 134 Ohio St.3d 68, 2012-Ohio-5337, 979 N.E.2d 1263.

{¶ 17} In *Jacob*, a municipal-court judge was convicted of three misdemeanor offenses related to soliciting prostitution and two counts of falsification for amending a charge in favor of a defendant without the prosecutor's consent. *Jacob* at ¶ 4-6. As for aggravating factors, this court found that Jacob had acted with a selfish motive, engaged in a pattern of misconduct, committed multiple offenses, and refused to acknowledge the wrongful nature of his misconduct. *Id*. at

¶ 12. And in mitigation, this court found that he had no prior discipline, made a timely, good-faith effort to rectify the consequences of his misconduct by resigning from his judgeship, exhibited a cooperative attitude toward the disciplinary proceedings, presented evidence of his good character and reputation, had a criminal sentence imposed for his misconduct, and sought other interim rehabilitation. *Id*. at ¶ 13. For Jacob's violation of five separate ethical rules, this court imposed a two-year suspension with the second year stayed on the condition that he commit no further misconduct. *Id*. at ¶ 8-9, 21.

{¶ 18} In *Mason*, this court imposed a one-year suspension, with six months conditionally stayed, on an attorney who had entered an *Alford* plea to a misdemeanor charge of soliciting sexual activity for hire and had engaged in an improper sexual relationship with a client. *Id.* at ¶ 6, 11, 24; *see also North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). And in *Dann*, this court imposed a six-month suspension on former Ohio Attorney General Marc Dann, who had violated Prof.Cond.R. 8.4(h) by soliciting improper compensation and filing false financial disclosures while serving as the state's chief law-enforcement officer. *Dann* at ¶ 3, 32. In determining the sanction to impose for Dann's professional misconduct, this court acknowledged that he had been convicted of two first-degree misdemeanors, had resigned from his elected office, and had been disqualified from holding public office for seven years. *Id*. at ¶ 9, 17-18.

{¶ 19} After comparing the facts of this case to those of the cases cited by the parties, the panel recommended that we suspend Bell from the practice of law for two years, with credit for six months of the time he has served under our June 2, 2022 interim-felony-suspension order. In addition, the panel recommended that Bell's reinstatement to the profession be conditioned on the submission of proof that he has successfully completed the terms of the community-control sanctions imposed by the Mahoning County Court of Common Pleas, that he has continued

to receive counseling, and that he has taken all medications as prescribed. The board recommends that we impose a two-year suspension for Bell's misconduct with six months' credit for time served and the conditions on reinstatement that were recommended by the panel.

## SANCTION

{¶ 20} Our caselaw holds that lawyers who attempt to engage in sexual activity with children should receive indefinite suspensions and should not be credited with time they were suspended from the practice of law during an interim felony suspension. In *Goldblatt*, this court stated, "When a lawyer engages in or attempts to engage in sexually motivated conduct with an underage victim, an indefinite suspension of the lawyer's license to practice is appropriate." 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, at ¶ 18. We recently imposed that sanction on an attorney for engaging in sexual contact with a 15-year-old girl. In *Disciplinary Counsel v. Romer*, __ Ohio St.3d __, 2023-Ohio-3099, __ N.E.3d __, Romer accepted his drug dealer's offer to arrange for a female to perform oral sex on him. When the young woman arrived at Romer's home, she told him that she was 19. *Id*. at ¶ 7. After they watched pornography, showered, and used cocaine together and the young woman touched Romer's genital area inside and outside his pants, the young woman told Romer that she was only 15 and threatened to report him to law enforcement if he did not make an additional payment. *Id*. at ¶ 8-9. Later that day, law-enforcement officers discovered that the young woman had been trafficked by the drug dealer, who was later charged with multiple federal crimes. *Id.* at ¶ 10-11.

{¶ 21} As a result of Romer's cooperation with federal authorities in the prosecution of the drug dealer, Romer obtained a plea deal that did not reflect the fact that his conduct included sexual contact with a minor. *Id*. at ¶ 11, 20. We indefinitely suspended Romer with no credit for time he had served under his interim felony suspension, *id.* at ¶ 20, recognizing, "When an attorney has

committed sex crimes, an indefinite suspension protects the public, deters other attorneys from engaging in similar wrongdoing, and preserves the public's trust in the legal profession; it also leaves open the possibility that the attorney may one day be rehabilitated and able to resume the competent, ethical, and professional practice of law," *id*. at ¶ 19, citing *Disciplinary Counsel v. Grossman*, 143 Ohio St.3d 302, 2015-Ohio-2340, 37 N.E.3d 155, ¶ 12.

{¶ 22} None of the cases cited by Bell—*Jacob*, *Mason*, and *Dann*—involved felonies related to attempted sexual relations with children. We find them inapposite. The panel, meanwhile, distinguished this case from those cited by relator—*Goldblatt*, *Cosgrove*, and *Schwarz*—in reaching its determination that we should impose a termed suspension period on Bell. For example, the attorney in *Goldblatt* engaged in negotiations with an undercover officer posing as a pimp for sex with a girl as young as nine years old and brought money with him to the place where he had agreed to meet the pimp; here, the panel determined that Bell's actions were different because he did not follow through with or attempt to complete the $80 transaction for sex acts that he had negotiated with a person whom he thought was 15 years old. The panel likewise distinguished *Cosgrove* and *Schwarz*, two other cases in which the attorneys actually attempted to meet the person being depicted as an underage person by an undercover officer. But in weighing those attorneys' level of commitment to their proposed illegal acts against Bell's, the panel and the board miss the most salient distinction from *Goldblatt*, *Cosgrove*, and *Schwarz*.

{¶ 23} Bell was an assistant prosecutor in the juvenile division of the Cuyahoga County Prosecutor's Office. His job was to protect children; instead, while on the job, he negotiated a price to victimize one. Bell's employment as a prosecutor means that "he was a person 'invested with the public trust,' " *Disciplinary Counsel v. Bennett*, __ Ohio St.3d __, 2023-Ohio-4752, __ N.E.3d __, ¶ 100 (Kennedy, C.J., dissenting), quoting *Disciplinary Counsel v. Berry*, 166 Ohio

St.3d 112, 2021-Ohio-3864, 182 N.E.3d 1184, ¶ 19. Therefore, he should be held to a higher standard. "It is not too much to say that a lawyer who holds the position of [prosecutor], with the substantial powers of that office, assumes responsibilities beyond those of other lawyers and must be held to the highest standard of conduct." *People v. Brown*, 726 P.2d 638, 641 (Colo.1986). A prosecutor should be held to a higher standard than other attorneys "because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state." *People v. Hill*, 17 Cal.4th 800, 802, 952 P.2d 673, 72 Cal.Rptr.2d 656 (1998).

{¶ 24} The primary purpose of attorney discipline "is not to punish the offender, but to protect the public." *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. Protecting the public, however, "is not strictly limited to protecting clients from a specific attorney's potential misconduct. Imposing attorney-discipline sanctions also protects the public by demonstrating to the bar and the public that this type of conduct will not be tolerated." *Disciplinary Counsel v. Schuman*, 152 Ohio St.3d 47, 2017-Ohio-8800, 92 N.E.3d 850, ¶ 17. Our duty to protect the public from attorneys who engage in misconduct gains increased significance when the attorney is employed by the public and engages in illegal activity while on the job.

{¶ 25} At the time of Bell's arrest, he was practicing in the child-support unit of the prosecutor's office. He had previously been employed in the abuse, neglect, and dependency division. The fact that a person whom the public has entrusted to advocate for the protection of children engages in the solicitation of sex from a minor while at his job calls for a sanction that reflects the seriousness of such a violation of the public trust and that protects the public from any further such activity. Adopting the board's recommendation here would mean lessening this court's typical sanction for lawyers who attempt to engage in sex with children from an indefinite suspension to a two-year suspension with credit for six months

served under the interim suspension. The board's recommended sanction would not sufficiently protect the public from Bell's illegal and unethical misconduct.

{¶ 26} Although an attorney suspended indefinitely is eligible to petition for reinstatement after two years, an indefinite suspension is not the same as a two-year suspension. This court has held that

> an indefinite suspension is just that: indefinite. Although two years is the earliest time at which a party may petition for reinstatement from an indefinite suspension, Gov.Bar R. V(25), an indefinite suspension carries with it no assurance of reinstatement in two years, five years, ten years or indeed at any time. Each indefinite suspension is considered on the facts known at the time of petition for reinstatement, including the severity of the misconduct for which the sanction was imposed.

*Akron Bar Assn. v. Chandler*, 62 Ohio St.3d 471, 473, 584 N.E.2d 677 (1992).

{¶ 27} Further, this court has held that lawyers convicted of felonies stemming from engaging in or attempting to engage in sexually motivated conduct with an underage victim "cannot expect to receive credit for an interim suspension." *Goldblatt*, 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, at ¶ 18, citing *Disciplinary Counsel v. Margolis,* 114 Ohio St.3d 165, 2007-Ohio-3607, 870 N.E.2d 1158, ¶ 26 (credit for an interim suspension is not given unless the lawyer shows that the felony conviction manifested a "one-time, never-to-be-repeated mistake").

{¶ 28} We cannot be sure that Bell's activity was a "one-time, never-to-be-repeated mistake." Bell negotiated a price for sex on July 30, 2021. He did not follow through with that agreement. But on August 5, when contacted by the officer posing as an underage girl, he engaged in another text conversation. Despite

having been given the chance to reflect on his actions, Bell continued to interact with the "girl" when she contacted him. Given that he engaged in the solicitation of sex with a person whom he believed to have been underage while simultaneously representing the public on juvenile issues, his lapse in judgment was especially profound. And like other lawyers who have attempted to engage in sex with children, Bell should not receive credit for time served while he was suspended from the practice of law during an interim felony suspension. *See Romer*, __ Ohio St.3d __, 2023-Ohio-3099, __ N.E.3d __, at ¶ 20; *Goldblatt* at ¶ 30; *Cosgrove*, 165 Ohio St.3d 280, 2021-Ohio-2188, 178 N.E.3d 481, at ¶ 13; *Schwarz*, 160 Ohio St.3d 194, 2020-Ohio-1542, 155 N.E.3d 830, at ¶ 13.

{¶ 29} Having considered the facts of this case and our applicable precedent, we conclude that the board's recommended sanction of a two-year suspension, with a credit of six months for time Bell has served under his interim felony suspension and conditions on his reinstatement, is not the appropriate sanction for Bell's misconduct in this case. We impose an indefinite suspension with no time credited for Bell's interim suspension.

## CONCLUSION

{¶ 30} Accordingly, Joseph Michael Bell is indefinitely suspended from the practice of law in Ohio with no credit for time he has served under our interim-felony-suspension order imposed on June 2, 2022. In addition to the requirements for reinstatement set forth in Gov.Bar R. V(25), Bell shall be required to submit proof that he has successfully completed the terms of the community-control sanctions imposed by the Mahoning County Court of Common Pleas in case No. 2021 CR 00601 and submit proof from a qualified health-care professional that he has continued to participate in counseling and is taking all prescribed medications. Costs are taxed to Bell.

Judgment accordingly.

FISCHER, DONNELLY, BOCK, and DETERS, JJ., concur.

DEWINE and STEWART, JJ., concur in part and dissent in part and would adopt the board's recommended sanction of a two-year suspension with six months of credit for time served under the interim felony suspension.

GINGER S. BOCK, J., of the First District Court of Appeals, sitting for BRUNNER, J.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Martha S. Asseff, Assistant Disciplinary Counsel, for relator.

John Juhasz, for respondent.

_____