**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. McGaffick***, Slip Opinion No. 2026-Ohio-2397.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2397

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* MCGAFFICK.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. McGaffick*, Slip Opinion No. 2026-Ohio-2397.]**

*Attorneys—Misconduct—Violation of the Rules of Professional Conduct—Conduct adversely reflecting on fitness to practice law—Public reprimand.*

(No. 2026-0160—Submitted March 24, 2026—Decided June 26, 2026.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2025-009.

_____

The per curiam opinion below was joined by DEWINE, DETERS, HAWKINS, and SHANAHAN, JJ. KENNEDY, C.J., and FISCHER, J., concurred in part and dissented in part and would impose a conditionally stayed six-month suspension, *see Disciplinary Counsel v. Hillis*, 2014-Ohio-2113 (imposing a conditionally stayed six-month suspension). BRUNNER, J., did not participate.

**Per Curiam.**

{¶ 1} Respondent, Jeffrey Marvin McGaffick, of Cleveland, Ohio, Attorney Registration No. 0034681, was admitted to the practice of law in Ohio in 1986.

{¶ 2} In a July 2024 complaint, relator, the Cleveland Metropolitan Bar Association, charged McGaffick with violating three professional-conduct rules related to his June 2024 criminal conviction for engaging in prostitution and possession of criminal tools, both first-degree misdemeanors.

{¶ 3} McGaffick waived a probable-cause determination. The parties entered into stipulations of fact, misconduct, and mitigating factors and submitted ten stipulated exhibits. McGaffick was the only witness to testify at the hearing before a three-member panel of the Board of Professional Conduct. At the conclusion of the hearing, the panel unanimously dismissed two of the three stipulated rule violations.

{¶ 4} After the hearing, the panel issued a report, finding by clear and convincing evidence that McGaffick's conduct violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law); one panel member dissented, stating that he would dismiss the alleged rule violation. The panel adopted the parties' stipulated mitigating factors and found that no aggravating factors are present and recommended that McGaffick be publicly reprimanded for his misconduct. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction. The parties jointly waived objections.

{¶ 5} For the reasons that follow, we adopt the board's findings of misconduct and publicly reprimand McGaffick.

## FINDINGS OF FACT AND MISCONDUCT

{¶ 6} Around early 2024, McGaffick began opening unsolicited junk emails describing potential "hookups" with women. At his disciplinary hearing, he testified that he initially thought those emails were "phishing expeditions" trying to

con him out of money. But after "dabbling" in pornography, he started searching the internet in April 2024 looking for "legitimate hookups." McGaffick sent a message to one of the services he found online to propose an encounter with a woman. After exchanging several text messages with a person he believed to be an escort, he agreed to pay $180 for what he expected to be a sexual encounter. On April 24, 2024, he drove 60 miles to meet the woman, only to discover that he had been communicating with an undercover law-enforcement officer who was part of a Mahoning Valley Human Trafficking Task Force sting operation. There is no suggestion in the record before this court that the undercover law-enforcement officer was posing as anything other than an adult female.

{¶ 7} McGaffick immediately was arrested and spent a night in jail before being released on a recognizance bond. He pleaded no contest in the Columbiana County Municipal Court to first-degree misdemeanor counts of engaging in prostitution and possession of criminal tools—i.e., the cellphone he used to arrange the encounter. He was found guilty, sentenced to suspended jail terms of 90 and 30 days respectively, and ordered to pay an aggregate fine of $500 plus costs. He also was ordered to serve one year of probation with conditions that required him to perform 20 hours of community service and complete an online prostitution-prevention course.

{¶ 8} The parties stipulated and the board found by clear and convincing evidence that McGaffick engaged in conduct that adversely reflects on his fitness to practice law in violation of Prof.Cond.R. 8.4(h) by engaging in an act of prostitution—i.e., "recklessly induc[ing], entic[ing], or procur[ing] another to engage in sexual activity for hire in exchange for the person giving anything of value to the other person," R.C. 2907.231(B) and (D). The board determined that McGaffick's conduct falls under the catchall provision of Prof.Cond.R. 8.4(h) in that it is not expressly prohibited by the Rules of Professional Conduct but nonetheless adversely reflects on McGaffick's fitness to practice law. *See*

*Disciplinary Counsel v. Bricker*, 2013-Ohio-3998, ¶ 21 (explaining that "[i]n order to find a violation of Prof.Cond.R. 8.4(h), there must be clear and convincing evidence that the lawyer has engaged in misconduct that adversely reflects on the lawyer's fitness to practice law, even though that conduct is not specifically prohibited by the rules, or there must be proof that the conduct giving rise to a specific rule violation is so egregious as to warrant an additional finding that it adversely reflects on the lawyer's fitness to practice law").

{¶ 9} We adopt the board's findings of misconduct.

## SANCTION

{¶ 10} "When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the attorney violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases." *Disciplinary Counsel v. Ranke*, 2024-Ohio-5491, ¶ 37. "We have consistently recognized that 'the goal of disciplinary proceedings is not to punish the errant lawyer, but to protect the public.'" *Id.*, quoting *Toledo Bar Assn. v. Hales*, 2008-Ohio-6201, ¶ 21.

{¶ 11} In his posthearing brief, McGaffick argued that the case should be dismissed, or in the alternative that a public reprimand would be an appropriate sanction. Relator argued that McGaffick's misconduct warranted a fully stayed 12-month suspension, in part because he acted with a selfish motive. The parties did not stipulate to any aggravating factors, and the board declined to find that McGaffick acted with a selfish motive.

{¶ 12} In addition, relator argued that McGaffick had been "invested with the public trust" because he was not just an attorney but also had served as an acting judge in the Mentor Municipal Court and remained on a list of attorneys eligible to serve in that capacity when his misconduct occurred.[1] We have acknowledged that

---

1. *See* R.C. 1901.121 (authorizing a municipal-court judge to appoint an attorney licensed in this State with at least six years of practice who is also a resident of the territory of the municipal court

"'[j]udges are held to higher standards of integrity and ethical conduct than attorneys or other persons not invested with the public trust.'" *Disciplinary Counsel v. O'Neill*, 2004-Ohio-4704, ¶ 57, quoting Shaman, Lubet & Alfini, *Judicial Conduct and Ethics*, §1.01, at 1-2 (3d Ed. 2000). In this case, however, the board found that McGaffick's previous service as an acting judge in the Mentor Municipal Court—the last instance of which occurred more than nine years before his arrest—was "irrelevant to the consideration of the appropriate sanction [for his misconduct]."[2]

**{¶ 13}** As for mitigation, the parties stipulated and the board found that McGaffick had (1) no prior discipline in his 39-year legal career, (2) cooperated in the disciplinary process, (3) submitted evidence of his good character, (4) taken steps to avoid similar misconduct in the future, and (5) accepted full responsibility for his misconduct. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (8).

**{¶ 14}** The evidence showed that in addition to complying with his criminal sentence, McGaffick entered into a two-year contract with the Ohio Lawyers Assistance Program ("OLAP") on June 26, 2025. He also has engaged in counseling and installed monitoring software on all of his electronic devices that sends screenshots of any questionable sites he visits to an accountability partner—a college friend—with whom he meets twice a month.[3] In addition, McGaffick testified that he attends a men's support group on the second and fourth Saturdays of every month. A September 26, 2025 email sent to relator by the associate

---

or a contiguous municipal or county court to serve as an "acting judge" during the temporary absence of the incumbent judge for reasons other than incapacity, disqualification, suspension, or recusal).

2. At his disciplinary hearing, McGaffick testified that he sought to remove his name from the list of potential acting judges maintained by the court after relator filed its notice of intent to file disciplinary charges against him.

3. Although McGaffick testified that the monitoring software was required by the OLAP contract, the contract itself shows that it was not.

director of OLAP, indicated that McGaffick was in full compliance with his OLAP contract.

{¶ 15} It is undisputed that McGaffick's misconduct did not involve any clients. Nevertheless, McGaffick has acknowledged that the person he believed to be an adult prostitute was "likely to have been a vulnerable person though not legally classified or defined as such." And the board found that McGaffick's conduct constituted "an intentional violation of the law which the lawyer swore to uphold" and concluded that his conduct "showed disrespect both for those who may be vulnerable in society and of the law."

{¶ 16} In determining the appropriate sanction to recommend for McGaffick's misconduct, the board examined six cases in which we imposed sanctions ranging from a public reprimand to an indefinite suspension for misconduct that included a sexual offense. *See Richland Cty. Bar Assn. v. Brightbill*, 56 Ohio St.3d 95 (1990) (publicly reprimanding an assistant prosecuting attorney convicted of soliciting sexual activity for hire and impersonating a police officer); *Disciplinary Counsel v. Hillis*, 2014-Ohio-2113 (imposing a conditionally stayed six-month suspension on an elected city law director who was convicted of soliciting prostitution and criminal trespass); *Disciplinary Counsel v. Mason*, 2019-Ohio-1269 (imposing a one-year suspension with six months conditionally stayed on an attorney convicted of soliciting prostitution who also engaged in a sexual relationship with a client); *Ohio State Bar Assn. v. Jacob*, 2017-Ohio-2733 (imposing a two-year suspension with one year conditionally stayed on a judge convicted on three counts of soliciting prostitution and two unrelated counts of falsification involving an unrelated case on his municipal-court docket); *Disciplinary Counsel v. Cosgrove*, 2021-Ohio-2188 (imposing an indefinite suspension on an attorney who pleaded guilty to attempted unlawful sexual conduct with a person he believed to be a 15-year-old girl); and *Disciplinary Counsel v. Bell*, 2024-Ohio-876 (imposing an indefinite suspension on an assistant prosecuting

attorney who negotiated a price for sex acts with a person he believed to be a 15-year-old girl). After comparing the misconduct in those cases to McGaffick's misconduct, the board recommends that we publicly reprimand McGaffick.

{¶ 17} We find that the facts of those six cases are largely distinguishable from the facts before us in that two of those cases involved attempts to arrange or engage in sexual conduct with minors, *see Cosgrove* at ¶ 6; *Bell* at ¶ 4-6, while four involved attorneys who were invested with the public trust, namely two assistant prosecutors, a judge, and an elected part-time city law director, *see Bell* at ¶ 4 (assistant prosecutor); *Jacob* at ¶ 1 (judge); *Brightbill* at 95 (assistant prosecutor); *Hillis* at ¶ 1 (elected city law director). And five of the six cases resulted in multiple ethical violations, whereas McGaffick has been found to have committed a single violation of Prof.Cond.R. 8.4(h). *See Cosgrove* at ¶ 7 (two rule violations); *Bell* at ¶ 9 (two rule violations); *Jacob* at ¶ 8 (four rule violations, including one violation of the Code of Judicial Conduct); *Mason* at ¶ 10, 14 (two rule violations); *Brightbill* at 96 (two rule violations). Moreover, one of those cases—*Bell*—involved all three of those distinguishing factors.

{¶ 18} Of those six cases, we find the facts of *Brightbill* and *Hillis* to be most comparable to those presently before us.

{¶ 19} In *Brightbill*, an assistant county prosecutor pleaded no contest to and was convicted of charges of impersonating a peace officer and soliciting sexual activity for hire. *Brightbill*, 56 Ohio St.3d at 95-96. As a result of those charges, Brightbill's employment was terminated. *Id*. at 96. Brightbill's misconduct was more serious than that of McGaffick, in part because as an assistant county prosecutor, he was invested with the public trust, *see Bell*, 2024-Ohio-876, at ¶ 23. In addition, Brightbill admitted that he had consorted with prostitutes on four or five occasions during the nine months that he worked in the prosecutor's office and that he was driving a county car on one occasion in which he engaged in sexual activity with a prostitute. *Brightbill* at 95-96. Furthermore, Brightbill admitted that

he had carried his assistant-county-prosecutor badge in his wallet and that it was distinctly visible when his wallet was open. *Id.* at 95. Although he had been convicted of impersonating a peace officer, Brightbill denied that he had ever held himself out to be a police officer. *Id.* And while he admitted that he had asked the prostitutes he had engaged to return his money to him, he denied that he had attempted to coerce them to do so. *Id.* at 96.

{¶ 20} This court found that Brightbill violated two disciplinary rules of the former Code of Professional Responsibility—one that prohibited lawyers from engaging in illegal conduct involving moral turpitude, and the other prohibiting lawyers from engaging in conduct that is prejudicial to the administration of justice. *Id.* Although the panel proposed that Brightbill be suspended from the practice of law for one year with no stay, the board recommended—and this court imposed— a public reprimand for his misconduct citing (1) the "trauma" Brightbill had experienced as a result of the criminal charges—an apparent reference to the publicity surrounding his criminal case and the loss of his employment, (2) the lack of clear and convincing evidence that he had used his position to intimidate prostitutes, and (3) the favorable character testimony offered at his disciplinary hearing. *Id.*

{¶ 21} In *Hillis*, an attorney who served as the elected part-time law director for the City of Zanesville had been found in his parked car on private property with a known prostitute. 2014-Ohio-2113, at ¶ 1. Hillis was arrested, charged, and pleaded no contest to misdemeanor offenses of soliciting prostitution and criminal trespass. *Id.* The parties entered into a consent-to-discipline agreement in which Hillis admitted that his conduct violated Prof.Cond.R. 8.4(h). *Id.* at ¶ 3. As in this case, no aggravating factors were present, and the mitigating factors were very similar to those present here. *Id.* at ¶ 4.

{¶ 22} Although we acknowledged that the facts of Hillis's case were very similar to those of *Brightbill*, 56 Ohio St.3d 95, we adopted the parties' stipulated

sanction of a six-month suspension, stayed in its entirety on the condition of no further misconduct, emphasizing that the greater sanction was appropriate because of Hillis's position as an elected public official. *Id*. at ¶ 4, 6-7.

{¶ 23} In this case, McGaffick's misconduct consisted of a single instance of engaging in prostitution and possessing criminal tools. He was found guilty of two first-degree misdemeanors, for which he has been found to have committed a single violation of Prof.Cond.R. 8.4(h). This conduct was an isolated incident in an otherwise unblemished, lengthy legal career (39 years)—a factor that often warrants the imposition of a lesser sanction, though more often when an attorney has engaged in an isolated incident of dishonest conduct. *See, e.g.*, *Columbus Bar Assn. v. Ryan*, 2024-Ohio-5570 (imposing a conditionally stayed one-year suspension on an attorney who failed to diligently and promptly represent a client and who made false statements to pressure the client to withdraw or impede the investigation of the client's grievance).

{¶ 24} The evidence shows that McGaffick was not a judge or assistant prosecutor invested with the public trust when his offense occurred. McGaffick has accepted full responsibility for his misconduct, voluntarily entered into a two-year OLAP contract that will expire on June 26, 2027, and sought counseling to address the underlying cause of his misconduct. The licensed professional clinical counselor who treated McGaffick opined that McGaffick "would be a low risk to repeat or reoffend going forward." In addition to the letters from his counselor and the associate director of OLAP, McGaffick submitted ten letters drafted by friends, religious leaders, his wife, two attorneys, and a retired judge that generally attested to his good character, commitment to the profession, and efforts to make positive changes in his life.

{¶ 25} On these facts and having given due weight to our precedent, we conclude that a public reprimand is sufficient in this case to protect the public from further misconduct.

## CONCLUSION

{¶ 26} Accordingly, Jeffrey Marvin McGaffick is publicly reprimanded for his misconduct.  Costs are taxed to McGaffick.

Judgment accordingly.

_____

Ted R. Fowles, Bar Counsel, and Philip Shipman, Assistant Bar Counsel, for relator.

Jeffrey M. McGaffick, pro se.

_____